COMMONWEALTH *vs.* ROOSEVELT WILSON.

Plymouth. February 5, 2004. - April 5, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Controlled Substances. Search and Seizure,* Clothing, Reasonable suspicion.
   *Evidence,* Inflammatory evidence, Hearsay, Relevancy and materiality,
   Expert opinion, Intent. *Intent.*

A Superior Court judge properly denied a criminal defendant's pretrial motion
   to suppress evidence obtained from the defendant's person after a stop and
   patfrisk, where both the stop and frisk were supported by specific and ar-
   ticulable facts establishing a reasonable belief that the defendant had been
   involved in a fight with a weapon, was armed and dangerous, and presented
   a threat to the police officer who stopped the defendant and frisked him or
   others, in that when the officer, who was responding to a radio dispatch
   regarding a stabbing or beating involving a group of men outside a pizza
   parlor (in an area in which the officer had made numerous arrests for fights
   and weapons violations), approached the described group and grabbed the
   back of the defendant's shirt, the defendant immediately turned away from
   the officer, walked away from the group, and simultaneously moved his
   hand into his waist area [393-395]; moreover, the Commonwealth
   shouldered its burden of establishing the reliability and basis of knowledge
   of the caller who reported the alleged beating or stabbing, where the caller
   identified himself as someone from the pizza parlor in question, described
   the events outside the parlor as they were occurring, and stated that he did
   not want to go outside, and where there was independent police corrobora-
   tion of the details of the call [395-396].
This court concluded that the "plain feel" doctrine, which authorizes a police
   officer to seize nonthreatening contraband discovered upon lawfully pat
   frisking a suspect's outer clothing for concealed weapons and feeling an
   object whose contour or mass makes its identity as contraband immediately
   apparent, was consistent with art. 14 of the Massachusetts Declaration of
   Rights and the Fourth Amendment to the United States Constitution
   [396-398]; accordingly, a police officer did not exceed the scope of a valid
   search of the defendant in a criminal case where it was immediately appar-
   ent to the officer when he touched the defendant's waist area that the
   object in the defendant's waistband was bundles of marijuana, and no
   manipulation was necessary to determine that fact [398-399].
At the trial of indictments for possession of marijuana with the intent to
   distribute and for committing this offense within 1,000 feet of a school, no
   substantial risk of a miscarriage of justice was created when certain
   unobjected-to testimony of the police officer who pat frisked the defendant
   was admitted, where the jury could not have inferred from the officer's

testimony that he was assigned to the "State police gang unit" and recognized the defendant during their encounter that the defendant was a gang member or was involved in a gang stabbing, and where the officer's testimony regarding the radio dispatch to which he responded referred to weapons and fighting, facts unrelated to the charges against the defendant. [399-400]

A Superior Court judge did not abuse his discretion in permitting a police detective to offer an expert opinion at a criminal trial on drug charges regarding whether a hypothetical set of facts was consistent with an intent to distribute narcotics. [400-401]

Evidence at the trial of indictments for possession of marijuana with the intent to distribute and for committing this offense within 1,000 feet of a school, consisting of certain quantities of marijuana the defendant possessed, the absence of any smoking paraphernalia, the manner in which the marijuana was packaged, and the defendant's possession of $476 in cash, a pager, and a cellular telephone, was sufficient to prove the elements of the crime. [401-402]

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on October 25, 2000.

A pretrial motion to suppress evidence was heard by *James F.X. Dinneen*, J., and the case was tried before *Paul C. Dawley*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Edward J. O'Brien* for the defendant.

*Carolyn A. Burbine*, Assistant District Attorney, for the Commonwealth.

*John Reinstein & Murray Kohn*, for American Civil Liberties Union of Massachusetts & another, amici curiae, submitted a brief.

COWIN, J. The defendant appeals from his convictions of possession of marijuana with the intent to distribute and for committing this offense within 1,000 feet of a school. See G. L. c. 94C, §§ 32C, 32J. On appeal, the defendant claims that his motion to suppress marijuana discovered on his person pursuant to a patfrisk should have been allowed. The defendant also claims that the trial judge erred in permitting a police officer to give irrelevant, prejudicial testimony; admitting expert testimony that the items found on the defendant were consistent with an intent to distribute; and denying the defendant's motions for

required findings of not guilty. We transferred the case here on our own motion and now affirm.[1]

1. *Motion to suppress.* The defendant claims that his motion to suppress should have been allowed because the seizure of the marijuana violated his rights under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights. Specifically, the defendant argues that the judge's findings of fact were clearly erroneous, that the officer conducting the patfrisk lacked reasonable suspicion to stop and frisk the defendant, and that the scope of the frisk exceeded that which is constitutionally permissible. In his challenge to the scope of the frisk, the defendant raises an issue of first impression, whether the "plain feel" doctrine comports with the requirements of art. 14. We conclude that it does; that the judge's findings were supported by the evidence; that there was reasonable suspicion for the stop and the frisk; and therefore that the evidence was properly seized.

a. *Facts.* We summarize the facts found by the motion judge supplemented by uncontested testimony from the motion hearing. These findings substantially overlap with the Commonwealth's evidence at trial.[2] On the night of October 24, 2000, the Brockton police received a telephone call from a person who stated, "[T]his is Stella's Pizza." The caller reported that a person was being beaten with a hammer or being stabbed in a group of ten people huddled across the street from the small commercial area where the pizza parlor was located. A police radio dispatch was broadcast containing this information, and State Trooper Francis Walls, alone in his unmarked vehicle and dressed in plain clothes, was the first officer to arrive at the scene. Walls stopped a short distance from the commercial area, saw a group of nine or ten men standing in a circle, but detected no suspicious activity. He was familiar with the area as one where he had made numerous arrests for drug and weapon violations and fights.

---

[1]We acknowledge the amicus brief filed jointly by the American Civil Liberties Union of Massachusetts and the Committee for Public Counsel Services.

[2]We discuss other evidence admitted at trial in conjunction with the specific issues raised by the defendant.

When he saw a backup vehicle close by, Walls pulled up to the group of men. As he got out of his vehicle, Walls made eye contact with the defendant. On making eye contact, the defendant turned, started walking away from Walls, and put his hand "to his waist area." The defendant's back was toward Walls, who, at this point, was concerned that the defendant possessed a gun. Walls grabbed the defendant by the back of his shirt and simultaneously placed his hand on "the area of the defendant's waist" where the defendant's hand had been. As soon as Walls put his hand on the defendant's waist, he felt a bundle of smaller packages, which he recognized by feel as "dime" bags of marijuana. Walls immediately asked the defendant, "You did that for weed? I thought you were putting a gun in your pants." The defendant responded that he did not "mess with guns." Walls retrieved the bag from the defendant's waist and handcuffed him.

Two backup officers, also in an unmarked vehicle and in plain clothes, were getting out of their vehicle[3] as Walls stopped and frisked the defendant. No evidence was found of the assault or beating that had been the subject of the radio dispatch. The defendant was arrested, and an inventory search revealed that in addition to the seized "dime" bags of marijuana, a pager, a cellular telephone, and $476 in cash were in his possession.

b. *Discussion.* In reviewing a ruling on a motion to suppress evidence, we accept the judge's subsidiary findings of fact absent clear error and leave to the judge the responsibility of determining the weight and credibility to be given oral testimony presented at the motion hearing. *Commonwealth* v. *Yesilciman,* 406 Mass. 736, 743 (1990), and cases cited. We review independently the application of constitutional principles to the facts found. *Commonwealth* v. *Eckert,* 431 Mass. 591, 593 (2000), and cases cited.

The defendant claims that the police lacked the requisite reasonable suspicion to stop him and to initiate a patfrisk. "In 'stop and frisk' cases our inquiry is two-fold: first, whether the initiation of the investigation by the police was permissible in the circumstances, and, second, whether the scope of the search

[3]There was no testimony that either vehicle was using blue lights or sirens.

was justified by the circumstances." *Commonwealth* v. *Silva*, 366 Mass. 402, 405 (1974). In both aspects, the inquiry is whether the police conduct was reasonable under the Fourth Amendment. *Id.*

In regard to the stop, a police officer may make an investigatory stop where suspicious conduct gives the officer reasonable ground to suspect that a person is committing, has committed, or is about to commit a crime. *Id.* Concerning the second part of the analysis, a *Terry*-type patfrisk incident to the investigatory stop is permissible where the police officer reasonably believes that the individual is armed and dangerous. *Terry* v. *Ohio*, 392 U.S. 1 (1968). *Commonwealth* v. *Silva, supra*, and cases cited. The officer's action in both the stop and the frisk must be based on specific and articulable facts and reasonable inferences therefrom, in light of the officer's experience. *Id.* at 406.

Applying these principles to the facts in this case, we first consider the stop. The defendant was seized (or stopped) when Walls grabbed the back of his shirt.[4] At that time, specific and articulable facts supported Walls's belief that the defendant had committed a crime. Walls was responding to a radio dispatch that described ten people involved in a stabbing or beating with a weapon outside Stella's Pizza. On arriving at the location, an area of Brockton where Walls had made numerous arrests for fights and weapon violations, Walls's observations confirmed a group of men huddled on the sidewalk, just as the caller had described. As he left his vehicle, Walls made eye contact with the defendant, who immediately turned away from him, walked away from the group, and simultaneously moved his hand into his "waist area." The totality of these facts supports a reasonable belief that the defendant had been involved in a fight with a weapon, and therefore, the stop was proper. *Commonwealth* v. *Mercado*, 422 Mass. 367, 371 (1996). The same facts justify the patfrisk, as they establish a reasonable belief that the defendant

---

[4]The defendant erroneously contends that the "stop" occurred when the police officers pulled their vehicles over and confronted the group on the sidewalk. The defendant was "stopped" when Walls grabbed his shirt because it was at this point, not before, that a reasonable person would have believed that he was not free to leave. *Commonwealth* v. *Thinh Van Cao*, 419 Mass. 383, 387-388, cert. denied, 515 U.S. 1146 (1995).

was armed and dangerous and presented a threat to the officer or others. See *Commonwealth* v. *Fraser*, 410 Mass. 541, 546 (1991) (protective frisk justified where officer responded to radio dispatch describing armed suspect, encounter took place in "high crime area," suspect appeared to pick something up or put something down, and suspect had hands in pockets when confronted by officer).

The defendant contends that the judge's findings concerning the stop and the frisk are clearly erroneous. With the exception of one finding,[5] that is not the case. The defendant challenges the finding that Walls observed the defendant's hand going to his waist area. Wall's testimony at the motion hearing supports the judge's finding. On direct examination, Walls stated, "As soon as he looked at me, he turned around and took his right hand and placed it into his pant line . . . ." Walls did not change his description during cross-examination, when he testified that the defendant "stuffed his hands into his pants," "placed something in his pants," "[his hand] went into his pants area," and "I could see [his hand] go into his pants area . . . ."

The defendant also challenges the reliability and credibility of the caller who reported an alleged beating or stabbing involving a weapon in front of Stella's Pizza. Where an officer's suspicion justifying a stop is based on an informant's tip, the Commonwealth has the burden of establishing the informant's reliability and basis of knowledge. A deficiency in either prong may be remedied by independent police corroboration. Because the standard is reasonable suspicion, not probable cause, "a less rigorous showing in each of these areas is permissible." *Commonwealth* v. *Lyons*, 409 Mass. 16, 19 (1990). The caller had a basis of knowledge because he identified himself as someone from "Stella's Pizza," described events occurring outside the pizza parlor at the very moment he telephoned, and stated, "I don't want to go out there." Independent police corrobora-

---

[5]The motion judge found that Walls recognized the defendant and, therefore, was aware of his criminal history before the patfrisk. As the Commonwealth concedes, this finding is not supported by the testimony. Walls testified that he recognized the defendant only after the frisk. This erroneous finding does not affect our decision.

tion of the details in the telephone call by Trooper Walls when he arrived at the location identified by the caller and saw a group of nine men establishes that the caller's information was also reliable. *Commonwealth* v. *Willis*, 415 Mass. 814, 819 (1993).

The defendant next argues that Walls exceeded the scope of the patfrisk by "explor[ing]" and seizing the package of marijuana he discovered in the defendant's waistband after he had determined it contained no weapon. The scope of a *Terry* search cannot be general; rather it is strictly tied to the circumstances that render its initiation permissible. *Commonwealth* v. *Johnson*, 413 Mass. 598, 601 (1992). *Commonwealth* v. *Silva*, supra at 407. The Fourth Amendment[6] permits a police officer to conduct a patfrisk for concealed weapons, provided that such a search is confined to what is minimally necessary to learn whether the suspect is armed and to disarm him should weapons be discovered. *Terry* v. *Ohio*, 392 U.S. 1, 29-30 (1968). In *Minnesota* v. *Dickerson*, 508 U.S. 366 (1993), the Supreme Court concluded that a police officer may also seize nonthreatening contraband discovered during a *Terry*-type frisk if the "police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity [as contraband] immediately apparent." *Id.* at 375. If the officer must manipulate or otherwise further physically explore the concealed object in order to discern its identity, then an unconstitutional search has occurred. *Id.* at 378-379.

The scope of a *Terry* search is not exceeded if, during a lawful patfrisk, it is immediately apparent to the police officer, in light of the officer's training and experience, that a concealed item is contraband. See *Minnesota* v. *Dickerson*, supra at 373, 376-377; *Commonwealth* v. *Johnson*, supra at 601. The "plain feel" doctrine is grounded on the same premise that authorizes an officer to frisk the suspect for concealed weapons, i.e., that the weapon will be immediately detected through touch during

---

[6]The Massachusetts Constitution does not afford "the individual more (or less) protection with respect to *Terry*-type stops and frisks under these circumstances than does the Federal Constitution." *Commonwealth* v. *Fraser*, 410 Mass. 541, 543 n.3 (1991).

the patfrisk. *Minnesota* v. *Dickerson, supra* at 376. As long as the object's contraband identity is immediately apparent to the officer, there is no further "invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons." *Id.* at 375. The "plain feel" doctrine is limited; it does not permit an officer to conduct a general exploratory search for whatever evidence of criminal activity he might find. The contraband nature of the item must be immediately apparent on touch. For these reasons, we conclude that the "plain feel" doctrine is consistent with art. 14, as well as with the Fourth Amendment.[7]

We consider "plain feel" as analogous to "plain view." As long as the initial search is lawful, the "seizure of an item whose identity is already known occasions no further invasion of privacy." *Id.* at 377. See *Commonwealth* v. *Balicki*, 436 Mass. 1, 8 (2002), quoting *Commonwealth* v. *D'Amour*, 428 Mass. 725, 730-731 (1999) ("Under [the plain view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant"). The only difference between the two doctrines is the sensory perception used to identify the contraband nature of the object. The "plain feel" doctrine merely recognizes that if contraband is immediately apparent by sense of touch, rather than sight, the police are authorized to seize it.

The "plain feel" doctrine is no more susceptible to fabrication than the "plain view" doctrine. The initial requirement, that the officer be conducting a valid patfrisk of the suspect, ensures that the officer is lawfully in the position immediately to identify the contraband. *Commonwealth* v. *Balicki, supra.* Once an otherwise lawful search is in progress, the police may inadvertently discover contraband. Requiring an officer who

---

[7]Several States have adopted the "plain feel" doctrine. See, e.g., *People* v. *Mitchell*, 165 Ill. 2d 211, 222 (1995); *Commonwealth* v. *Crowder*, 884 S.W.2d 649, 652 (Ky. 1994); *People* v. *Champion*, 452 Mich. 92, 105 (1996), cert. denied, 519 U.S. 1081 (1997); *Commonwealth* v. *Zhahir*, 561 Pa. 545, 563 (2000). Although the Court of Appeals of New York rejected the doctrine, that court did so prior to the Supreme Court's decision in *Minnesota* v. *Dickerson*, 508 U.S. 366 (1993). See *People* v. *Diaz*, 81 N.Y.2d 106, 111 (1993).

recognizes contraband by "plain feel" to ignore this fact and walk away from the suspect without seizing the object flies in the face of logic.

Nor is the "plain feel" doctrine an extension of current law under art. 14. In *Commonwealth* v. *Johnson*, 413 Mass. 598 (1992), an officer saw the defendant place something inside the waistband of his pants as the officer approached the defendant's vehicle. Officers pulled the defendant from his vehicle, frisked him, and one officer withdrew a plastic bag containing a lump of white powder from the defendant's pants. We concluded that the cocaine discovered in the defendant's waistband was properly seized pursuant to a patfrisk because the officers feared for their safety and confined the search "to what was minimally necessary to learn whether the [defendant was] armed." *Commonwealth* v. *Johnson, supra* at 601-602, quoting *Terry* v. *Ohio*, 392 U.S. 1, 30 (1968). The scope of the search was not impermissible, despite the fact that the officer did not believe the concealed package he felt was a weapon. *Commonwealth* v. *Johnson, supra* at 600-601. The *Johnson* case, decided seven months before *Minnesota* v. *Dickerson, supra,* recognized the doctrine (albeit without naming it) we expressly adopt today pursuant to art. 14.

When we apply these principles to the facts here, Walls did not exceed the scope of the search because the judge found that it was immediately apparent to Walls when he touched the defendant's waist area that the object in the defendant's waistband was bundles of marijuana, and no manipulation was necessary to determine that fact. *United States* v. *Proctor*, 148 F.3d 39, 43 (1st Cir. 1998) (seizure under "plain feel" doctrine proper where officer immediately recognized concealed bag as containing marijuana). Contrast *Minnesota* v. *Dickerson, supra* at 378-379 (scope of search unconstitutional where officer manipulated contents of defendant's pocket before discerning lump was contraband).

The defendant also contests the judge's finding that Walls knew the item in the defendant's waistband was drugs as soon as he touched it and did not manipulate it. The judge's finding is supported by record evidence. Walls repeatedly stated, despite thorough examination by the defense attorney, that he knew the

identity of the object as soon as he touched it, without any manipulation ("The second I hit it, that's what I felt"; "As soon as I felt it, I knew what it was"; "As soon as I grabbed it, as soon as I grabbed his waist area, I knew exactly what it was"). Other testimony by Walls supports this finding: his seven years of experience as a State trooper, and his inquiry to the defendant made immediately on touching the object, "You did that for weed?"

Contrary to the defendant's argument that there was no evidence concerning Walls's training and experience in tactile detection of marijuana or its packaging, Walls stated that he has made numerous arrests for drug violations, has seized drugs, and was serving in the "gang unit." From all of this evidence, the judge could reasonably infer that Walls had sufficient personal experience in narcotics packaging and detection to identify immediately the object in the defendant's waistband.

2. *Trial.* The defendant argues that certain unobjected-to testimony of Trooper Walls was improperly admitted. His specific objections are to Walls's testimony that he was assigned to the "State police gang unit" in the Brockton area and that he recognized the defendant during their encounter. The defendant also contends that the content of a police radio dispatch should not have been admitted because it was hearsay. As there was no objection to any of the evidence, we review these allegations to determine if there was error, and if so, whether any error alone, or the totality of them, may have created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). The defendant argues that such a risk was created because the jury could infer from the improperly admitted testimony that the defendant was a gang member who had prior contact with Walls, and that he was part of a gang that stabbed someone in front of Stella's Pizza.

While Walls's testimony that he was a member of the Brockton "gang unit" and that he recognized the defendant was irrelevant and should not have been admitted, the jury could not have reasonably inferred from these facts that the defendant was a gang member or was involved in a gang stabbing. The testimony was clear that there was no evidence of a stabbing or

fight, and no weapons were discovered on any of the individuals present with the defendant that evening. Aside from Walls's statement that he served on the gang unit, there was no other evidence introduced at trial that indicated the defendant or any of the other men in the group were members of a gang, and no reference to gang membership was made by the prosecutor in closing argument.

Similarly, the content of the radio dispatch was irrelevant and, over objection, should not have been admitted. Hearsay considerations aside, the evidence was not relevant because the content was unrelated to any element of the charged offenses (possession of marijuana with the intent to distribute or possession with the intent to distribute within 1,000 feet of a school). Even if marginally relevant to explain why Walls frisked the defendant and discovered the "dime" bags of marijuana, it was not necessary for Walls to describe the dispatch to the jury and, in any event, its probative value was outweighed by its prejudicial effect. *Commonwealth* v. *Martinez*, 431 Mass. 168, 173-174 (2000). Walls should have been permitted to testify only that he arrived at the area as a result of a radio dispatch.

However, the admission in evidence of the radio dispatch did not create a substantial risk of a miscarriage of justice. The dispatch concerned weapons and fighting, facts unrelated to the charges against the defendant. Again, all persons present with the defendant when the police officers arrived were searched, and no weapons or physical evidence of a recent fight were discovered.[8] None of the errors alone or in combination created a substantial risk of a miscarriage of justice.

The defendant next contends that Detective James Smith should not have been permitted to offer an expert opinion whether a hypothetical set of facts was consistent with an intent to distribute narcotics. Smith, a member of the Brockton police department for over seventeen years and with narcotics training and experience, testified that the possession of one-half ounce of marijuana individually packaged in twenty smaller bags,

---

[8]Because we conclude that none of these statements created a substantial risk of a miscarriage of justice, the lack of an objection by defense counsel did not deprive the defendant of effective assistance of counsel. *Commonwealth* v. *Curtis*, 417 Mass. 619, 624-625 n.4 (1994).

$476 in cash, a pager, and a cellular telephone, but no smoking paraphernalia, is consistent with an intent for "street distribution" rather than personal use. We have consistently upheld the use of narcotics investigators as experts in this manner. The admission of such evidence is largely within the discretion of the judge whose ruling will be reversed only where the admission constitutes an abuse of discretion or other error of law. *Commonwealth* v. *Johnson*, 413 Mass. 598, 604 (1992), and cases cited. "The role of an expert witness is to help jurors interpret evidence that lies outside of common experience." *Commonwealth* v. *Tanner*, 45 Mass. App. Ct. 576, 581 (1998). Whether a certain quantity of drugs is consistent with personal use or with distribution is a matter not within the common experience of jurors. The judge properly admitted Detective Smith's testimony because it was limited to an opinion that the hypothetical facts were consistent with possession of marijuana with the intent to distribute. See *Commonwealth* v. *Johnson*, 410 Mass. 199, 202 (1991). But cf. *Commonwealth* v. *Woods*, 419 Mass. 366, 375 & n.13 (1995).

Finally, the defendant claims that his motion for required findings of not guilty should have been allowed because the Commonwealth's evidence was not sufficient to prove an intent to distribute. The evidence, he claims, was equally consistent with possession for personal use as with possession with the intent to distribute. We review the evidence in the light most favorable to the Commonwealth to determine whether *"any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979). The Commonwealth's evidence was sufficient to prove the elements of the crime.[9] A reasonable jury could have found that the Commonwealth met its burden by relying on the amount of marijuana the defendant possessed in the absence of any smoking paraphernalia, the manner in which the marijuana was packaged, the defendant's possession of $476 in cash, a pager, and a cellular telephone, and Detective

---

[9]The defendant filed a similar motion at the conclusion of all the evidence. The Commonwealth's case did not deteriorate during the presentation of the defendant's case. *Commonwealth* v. *Evans*, 436 Mass. 369, 376-377 (2002).

Smith's testimony that the aforementioned facts are consistent with an intent to distribute.

*Judgments affirmed.*