COMMONWEALTH vs. WILLIAM M. OSBORNE.

No. 02-P-383.

Suffolk. April 1, 2004. - November 9, 2004.

Present: LENK, COWIN, & DOERFER, JJ.

Further appellate review granted, 443 Mass. 1104 (2005).

*Controlled Substances. Practice, Criminal,* Waiver of trial by jury, Motion to
    suppress. *Constitutional Law,* Search and seizure. *Search and Seizure,*
    Threshold police inquiry, Protective frisk, Body examination.

This court reversed the conviction of the criminal defendant where he had not
    signed a written waiver of his right to a jury trial, as required by G. L.
    c. 263, § 6. [447-448]

Evidence that a police officer had seized from the defendant in the course of a
    lawful patfrisk during a *Terry* stop, *Terry* v. *Ohio,* 392 U.S. 1 (1968), was
    admissible at the trial of a criminal complaint charging the defendant with
    possession of a class B substance, where the seizure came within the
    "plain feel" doctrine as defined in *Commonwealth* v. *Wilson,* 441 Mass.
    390, 397 (2004), in that the officer had previously uncovered a folding
    knife on the defendant's person and then felt a hard object between the
    cheeks of the defendant's buttocks, the contraband nature of which, in the
    circumstances, was immediately apparent on touch. [448-451]

COMPLAINT received and sworn to in the Dorchester Division
of the District Court Department on January 4, 1995.

A pretrial motion to suppress evidence was heard by *Milton
L. Wright, Jr.,* J., and the case was heard by *Thomas J. May,* J.

*Deborah Bates Riordan* for the defendant.

*Amanda Lovell,* Assistant District Attorney, for the
Commonwealth.

COWIN, J. After a bench trial in the District Court, the
defendant was convicted of possession of a class B substance, a
lesser-included offense of possession of a class B substance
with intent to distribute with which he had been charged.[1] He

[1]He was also charged with possession with intent to distribute in a school
zone, G. L. c. 94C, § 32J, and was found not guilty of that charge.

contends on appeal that his conviction is invalid because he did not sign a written waiver of jury trial. He argues also that the contraband introduced in evidence against him was obtained as a result of an unlawful search, see *Minnesota* v. *Dickerson*, 508 U.S. 366, 375 (1993); *Commonwealth* v. *Wilson*, 441 Mass. 390, 396 (2004) ("The scope of a *Terry*[2] search is not exceeded if, during a lawful patfrisk, it is immediately apparent to the police officer . . . that a concealed item is contraband"), and it was therefore error to deny his motion to suppress.

We agree with the defendant that the absence of a written waiver of jury trial requires that the conviction be reversed. We conclude, however, that the locating and subsequent seizure of the narcotics were permissible. Accordingly, the motion to suppress was properly denied, and the evidence remains available for use in the event of a retrial.

1. *Background.* The motion judge permissibly found, see *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990), that, acting on an informant's tip that the defendant was a seller of cocaine, Boston police Sergeant Paul W. Murphy, Jr., and his partner stopped the defendant for the purpose of conducting a threshold inquiry. See *Terry* v. *Ohio*, 392 U.S. 1, 30-31 (1968). During the course of a patfrisk of the suspect, Sergeant Murphy removed from the defendant's jacket pocket a wooden-handled "747" folding knife. Continuing the patfrisk, Sergeant Murphy felt through the suspect's clothing a hard object located between his buttocks. In his own words set forth in a subsequent affidavit, he "again felt this area of [the defendant's] clothing, and formed the opinion, based upon the totality of the circumstances, that [the defendant] was secreting drugs, namely cocaine, in his buttocks area."

The defendant was arrested and transported to a police station. He was searched, and a plastic bag containing white powder was seen protruding from his buttocks.[3] When the defendant would not permit the officers to take the packet, Sergeant Murphy applied for, and received, a search warrant, pursuant to

---

[2]*Terry* v. *Ohio*, 392 U.S. 1 (1968).

[3]Subsequent testing identified the white powder as rock "crack" cocaine.

which the defendant was taken to a hospital for removal of the packet.[4]

A complaint issued, and the defendant filed a motion to suppress the packet of cocaine which was denied. Prior to trial, the defendant filed a "motion to reconsider/renew the defendant's motion to suppress." That motion was denied by the trial judge on the basis that the matter had been fully considered on the initial motion. Subsequently, after conducting a colloquy, the judge accepted the defendant's waiver of jury trial. No written waiver was executed.

2. *Jury trial waiver.* "Any defendant in a criminal case other than a capital case . . . may, if he shall so elect . . . , waive his right to trial by jury by signing a written waiver thereof and filing the same with the clerk of the court. If the court consents to the waiver, he shall be tried by the court instead of by a jury . . . ." G. L. c. 263, § 6, as appearing in St. 1979, c. 344, § 19. See Mass.R.Crim.P. 19(a), 378 Mass. 888 (1979). No written waiver was filed in this case. The Commonwealth defends the conducting of a nonjury trial in these circumstances by relying on an oral colloquy between the judge and the defendant on the subject, following which the judge found that the defendant's waiver was knowing and voluntary. Because the transcript of the colloquy is incomplete, the Commonwealth has supplemented the transcript with an affidavit of the judge detailing his usual practice in such situations. See *Commonwealth* v. *Robles*, 423 Mass. 62, 73-74 (1996).

Adequacy of the colloquy is, however, academic where no signed written waiver has been obtained. A written waiver is required. See *Ciummei* v. *Commonwealth*, 378 Mass. 504, 509-511 (1979). Where the Legislature has prescribed by statute a particular method to be followed to effectuate a waiver, we are not at leave to depart from it. See *Gallo* v. *Commonwealth*, 343 Mass. 397, 402 (1961); *Commonwealth* v. *Duquette*, 386 Mass. 834, 840 n.6 (1982); *Commonwealth* v. *Wheeler*, 42 Mass. App. Ct. 933, 934 (1997). The Commonwealth argues, on the basis of *Commonwealth* v. *Collado*, 426 Mass. 675, 678 (1998), that a

[4]At this point, the defendant removed the packet himself and gave it to the officers.

defective jury waiver does not require reversal. That case did not treat the question of the absence of a written jury waiver and is inapposite. Furthermore, we are not prepared to assume merely from the expansive language in a portion of the *Collado* opinion, *ibid.*, that the Supreme Judicial Court intended sub silentio to supplant the bright-line rule reflected in our decision in *Commonwealth* v. *Wheeler*, *supra*, one year earlier. Because there was no written waiver here, the conviction cannot stand.

3. *Motion to suppress.* The defendant moved to suppress the cocaine found on his person. His original motion asserted generally that the "warrant-less seizure" of the evidence violated his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States and art. 14 of the Declaration of Rights of the Massachusetts Constitution. In a memorandum that accompanied the motion, he expanded somewhat on this generality by arguing that there was an insufficient basis for search of a body cavity. The motion judge determined that the police had a reasonable basis for a *"Terry* stop" of the defendant, and therefore could permissibly conduct a pat-down search for weapons. See *Terry* v. *Ohio*, 392 U.S. 1, 24 (1968).[5] The motion judge found that, in the course of the frisk, the police came upon a "747" folding knife in the defendant's jacket pocket. The judge further ruled that "[a]fter discovering the knife, the officers had the authority to arrest the defendant and conduct a more thorough search."

When the defendant, represented by other counsel, attempted prior to trial to renew his motion to suppress to advance his theory that the officer's seizure had exceeded the scope of the "plain feel" doctrine, the trial judge declined to consider the question on the ground that the suppression issues had been fully considered previously. This may not have been the case. In the earlier proceeding, the motion judge identified the discovery of the "747" folding knife as the turning point at which the police had probable cause to arrest, and thus the right to conduct a search incident to an arrest. See *Commonwealth* v. *Mantinez*, 44 Mass. App. Ct. 513, 517-518 (1998). Therefore,

---

[5]Neither the stop nor the justification for a patfrisk is challenged on appeal.

according to the motion judge, an evidentiary search was permissible.[6]

We think that that analysis did not go far enough. Nothing that has been brought to our attention from the record established what a "747" folding knife is, or, more important, whether possession of such an item is unlawful. Absent such a showing, there was no basis for determining that the police had probable cause at that point to believe that a crime had been, or was being, committed. Continuation of the patfrisk thus could only be predicated on the need to search for weapons as authorized by *Terry* v. *Ohio, supra.*

An argument can be made that the issue has been waived because the original motion and the accompanying memorandum did not expressly refer to the "plain feel" issue. On the other hand, the motion does complain of a seizure of evidence without a warrant, and the ensuing hearing developed facts that indicated that a violation might have occurred. Successor counsel, still prior to trial, attempted unsuccessfully to focus the trial judge on the fact that the specific "plain feel" issue had not been addressed at the motion stage. Assuming, without deciding, that the issue has been preserved, we address the merits.

The Supreme Court has determined that where a police officer engaged in a lawful patfrisk during a *Terry* stop "feels an object whose contour or mass makes its identity [as contraband] immediately apparent," a warrantless seizure of the object does not offend the Fourth Amendment. *Minnesota* v. *Dickerson*, 508 U.S. 366, 375 (1993). The concept, which has come to be known as the "plain feel" doctrine, is based on the principle underlying "plain view," i.e., that the officer is already legitimately present and conducting a permissible search for weapons and that he cannot be required to ignore contraband that is within his sight. *Id.* at 375-376. See *Commonwealth* v. *Santana*, 420 Mass. 205, 211 (1995). The "plain feel" doctrine has been accepted by the Supreme Judicial Court as consistent with art. 14 of the Declaration of Rights of the Massachusetts Constitution. *Commonwealth* v. *Wilson*, 441 Mass. 390, 397 (2004). However, the "doctrine is limited; it does not permit an officer to conduct

---

[6]*Commonwealth* v. *Wilson*, 441 Mass. 390 (2004), had yet to be decided by the Supreme Judicial Court.

a general exploratory search for whatever evidence of criminal activity he might find. The contraband nature of the item must be immediately apparent on touch." *Ibid.*

The present case requires a judgment whether the line between a permissible *Terry* stop patfrisk resulting in a "plain feel" seizure and an impermissible evidentiary search that turns up contraband has been crossed. We turn to the affidavit of Sergeant Murphy in support of his application for a search warrant,[7] and set forth the portion that focuses on the *Terry* stop search:

> "I conducted a pat-frisk of his [the defendant's] person as I was concerned with my personal safety and the safety of that of my partner, Officer Freeman. During said pat-frisk, a wooden handled, '747' folding knife was removed from [the defendant's] jacket pocket and a hard object was felt by me through his clothing, in the area between the cheeks of his buttocks. Based upon my training and experience as a Boston Police officer . . . , I have come to know that persons store drugs, as well as weapons, secr[eted] in this area of their body, to avoid detection and/or arrest, by the authorities. I again felt this area of [the defendant's] clothing, and formed the opinion, based upon the totality of the circumstances, that [the defendant] was secreting drugs, namely cocaine, in his buttocks area."

We conclude that the facts as described come within the "plain feel" doctrine as defined in *Commonwealth* v. *Wilson, supra.* Having already uncovered a folding knife on the suspect's person, the officer, in the course of the patfrisk, felt a hard object "between the cheeks of [the suspect's] buttocks." It must have taken little imagination, even apart from police training and experience, for the officer to realize that the suspect was transporting something he did not want others to find. We consider that, in these circumstances, "[t]he contraband nature of the item [was] immediately apparent on touch." *Id.* at 397.

The defendant urges that we parse the statements in the af-

---

[7]The motion judge conducted a nonevidentiary hearing and, as indicated above, did not reach the "plain feel" issue. Thus, he made no findings on the subject. Given that the defendant has offered no evidence to the contrary, restricting himself to argument on the legal significance of the events, we accept the facts set forth in Sergeant Murphy's affidavit as true.

fidavit that the officer "again felt this area of [the defendant's] clothing, and formed the opinion" that he was secreting drugs, and determine that the need for a "second feel" before identifying the item as contraband transformed the patfrisk into an impermissible evidentiary search. We read the affidavit in a commonsense manner. Doing so, it is clear that the officer immediately recognized the item, from its size, hardness, and location, as contraband. That he forthwith touched it a second time before proceeding does not remove the encounter from the category of a "plain feel" seizure.

We read the *Dickerson* and *Wilson* decisions as efforts to prevent improper evidentiary searches that are rationalized on the theory that they are only *Terry* stop safety measures, while maintaining the proposition that the police need not close their eyes to contraband should they come upon it in the course of an otherwise lawful patfrisk. There is no evidence here that the initial patfrisk was unlawful; indeed, the defendant does not contend that it was. Nothing suggests that Sergeant Murphy was engaged in an evidentiary search when he came upon the item in question. His instantaneous recognition of the secreted item was consistent with the requirements of the "plain feel" cases. His statement that he touched the item a second time and formed an opinion "upon the totality of the circumstances" that he had located contraband does not alter the conclusion that the nature of the item was immediately apparent on touch. See *Commonwealth* v. *Wilson, supra* at 397. The seizure was based on a supportable police judgment made with requisite immediacy.

*Judgment reversed.*

*Finding set aside.*