Commonwealth *vs.* Reginald Grissett.

No. 05-P-301.

Plymouth. February 16, 2006. - June 7, 2006.

Present: Armstrong, C.J., Dreben & Graham, JJ.

*Controlled Substances. Evidence,* Expert opinion, Opinion. *Practice, Criminal,* Assistance of counsel.

Discussion of the admission of expert opinion evidence at trial when a criminal defendant is charged with possession of controlled substances. [457-458]

Improper opinion evidence in the form of an improper direct expression by a Commonwealth expert (a narcotics investigator) as to the guilt of a criminal defendant on charges of possession of controlled substances [458-459], combined with ineffective assistance of the defendant's trial counsel, whose direct examination of the defendant "opened the door" for the prosecutor to impeach him by use of his prior conviction of distribution of cocaine, required reversal of the defendant's drug convictions and a remand of the matter for a new trial [459-460].

Complaint received and sworn to in the Brockton Division of the District Court Department on October 23, 2001.

The case was tried before *Richard D. Savignano*, J.

*Leslie Feldman-Rumpler* for the defendant.

*Karen O'Sullivan*, Assistant District Attorney, for the Commonwealth.

Graham, J. A District Court jury convicted the defendant, Reginald Grissett, of possession with intent to distribute cocaine, possession with intent to distribute marijuana, and criminal trespass.[1] On appeal, he contends that (1) the trial judge erred in allowing in evidence opinion testimony from a police officer as

_____

[1]The defendant does not challenge the trespass conviction. He was acquitted of a charge of possession with intent to distribute drugs within a school zone. For explanation of this crime, see *Commonwealth* v. *Cavanaugh*, 63 Mass. App. Ct. 111, 114 (2005). An additional charge for open and gross lewdness was dismissed prior to trial.

to his guilt; (2) his defense counsel,[2] whose direct examination "opened the door" for the prosecutor to impeach him by use of the defendant's prior conviction of distribution of cocaine, was ineffective; and (3) the trial judge erred in denying his motion for mistrial after a Commonwealth witness testified about a statement ordered suppressed by the judge prior to trial.

1. *Background.* During the late evening of October 22, 2001, Trooper Francis Walls and Sergeant Mark Kiley of the State police and Detective Mark Reardon of the Brockton police department were on patrol in an unmarked cruiser in a residential neighborhood of Brockton. They observed the defendant and another male in the driveway of a multifamily home. Trooper Walls exited the vehicle and approached the defendant, who was urinating near the side of the building.

After ascertaining that the defendant did not live at that location, Walls conducted a patfrisk of the defendant for weapons. While patting down the area around the defendant's right sock, Walls noticed a clear plastic bag on the ground between the defendant's feet. The plastic bag contained twenty-one smaller clear plastic bags, all of which held a white colored substance,[3] later determined to be 2.125 grams of a mixture containing cocaine. The defendant was arrested and transported to the Brockton police station.

In the course of the booking procedure, the police found inside the defendant's pants waistband four small "zip-lock" type bags containing marijuana.[4] The police also found seventy-three dollars in cash on the defendant, but no cellular telephone, pager, scales, or other items often associated with the drug distribution trade.

a. *Trial testimony.* At trial, the Commonwealth called as one of its witnesses Sergeant Kiley, who testified as an expert on

---

[2]Our references to defense counsel are to trial counsel. The defendant is represented by new counsel on appeal.

[3]The larger bag was about four inches from the defendant's left foot. Walls testified at trial that he did not observe the bag when he initially started to pat frisk the defendant.

[4]The officers discovered two ounces of marijuana in the back yard, near the fire escape stairway of the house outside of which the defendant was arrested. The defendant was not charged with any crime nor shown to be connected at all with this cache of marijuana.

street level drug distribution and as a percipient witness.[5] On direct examination, Kiley testified as to particulars of the method of packaging cocaine for "street sale" in Brockton, and the most "common" amounts or weights of cocaine sold on Brockton streets, namely twenty and forty dollar packages.[6]

The prosecutor inquired of Kiley whether the amounts seized in the twenty-one smaller plastic bags of cocaine were "significant" to him in any way. Kiley stated, "it's far more than a user would carry on his person," at which point defense counsel objected. The judge permitted the questioning to continue. Thereafter, Kiley, in an expansive answer to a query why the quantity of cocaine seized was significant, stated, "It's clearly in my opinion for drug distribution." Kiley repeated this opinion on at least three subsequent occasions during the Commonwealth's direct examination with respect to the seized cocaine and marijuana.[7] Finally, near the close of Kiley's direct examination, the prosecutor elicited an opinion from Kiley that was in proper form.[8]

b. *Defendant's case.* The defendant, a nineteen year old unemployed high school drop out, testified in his own defense. On direct examination, he denied that he ever possessed cocaine and claimed that he had purchased the four "dime bags" of marijuana for personal use just prior to his arrest. He further testified he had never purchased or used cocaine. Pursuing this

---

[5]It was permissible, though inadvisable, for Kiley to testify as a percipient and expert witness, but there was some spillage between the two perspectives so as to blur the lines between them. See *Commonwealth* v. *Tanner,* 45 Mass. App. Ct. 576, 579 (1998) ("It is easy for the line between specific observations and expert generalizations to become blurred in these situations"); *Commonwealth* v. *Ortiz,* 50 Mass. App. Ct. 304, 307 (2000) (blurring of such testimony).

[6]See *Commonwealth* v. *Clark,* 446 Mass. 620, 624 (2006) ("Evidence of uniform packaging is relevant to the question of intent to distribute").

[7]In particular, more than once, Kiley opined that based on the "combination of" cocaine and marijuana, he believed the drugs were for distribution.

[8]*Q.* "It [amount of marijuana seized from the defendant] is *consistent with distribution?"* (emphasis supplied).

*A.* "Yes."

line of inquiry, defense counsel asked the defendant, "Have you ever seen rock cocaine like that crack cocaine like that?" The defendant answered, "No, I haven't."

Prior to commencing her cross-examination of the defendant, the prosecutor sought and received permission from the judge to impeach the defendant with a prior conviction of possession with intent to distribute cocaine. After the defendant confirmed his prior conviction of possession with intent to distribute cocaine, his defense became unhinged.

2. *Admission of expert opinion evidence.* Admission of testimony of narcotics investigators as experts at trial is largely a matter of discretion for the trial judge. The judge's decision to admit expert testimony will be given deference absent an abuse of discretion or other error of law. *Commonwealth* v. *Johnson,* 413 Mass. 598, 604 (1992). See *Commonwealth* v. *Wilson,* 441 Mass. 390, 401 (2004).

"The role of an expert witness is to help jurors interpret evidence that lies outside of common experience." *Commonwealth* v. *Tanner,* 45 Mass. App. Ct. 576, 581 (1998). An element of the Commonwealth's case in proving a charge of drug possession with intent to distribute is whether the subject drugs, connected to a given defendant, were for personal use or for distribution. This is not a matter within the common experience of jurors. *Commonwealth* v. *Wilson,* 441 Mass. at 401. However, such testimony may be admitted only if it is "limited to an opinion that the hypothetical facts were consistent with possession of [subject drugs] with the intent to distribute." *Ibid.* See *Commonwealth* v. *Johnson,* 410 Mass. 199, 202 (1991). Opinion evidence elicited from such a qualified expert properly informs the jury of the significance of evidence generally, and does not state an opinion as to the ultimate issue of intent, which must be resolved by the jury (or judge as a fact finder). See *Commonwealth* v. *Santiago,* 41 Mass. App. Ct. 916, 917 (1996); *Commonwealth* v. *Villanueva,* 47 Mass. App. Ct. 905, 907 (1999).

Opinion testimony may "touch" on an ultimate issue in the case, see *Commonwealth* v. *Cruz,* 413 Mass. 686, 690 (1992); *Commonwealth* v. *Cyr,* 425 Mass. 89, 96 (1997), if couched appropriately, but such testimony can never directly speak to, or

express a point of view, on the issue of guilt or innocence. See *Commonwealth* v. *Tanner*, 45 Mass. App. Ct. at 579.

Thus, for example, an opinion by a qualified witness on the subject of drug possession with intent to distribute, which speaks to the point that specific conduct, or the presence of certain facts or circumstances, as grounded in the trial evidence, would be "consistent with" a drug transaction, has been deemed proper. *Commonwealth* v. *Lopez*, 55 Mass. App. Ct. 741, 746 (2002). Expert testimony must be explanatory, and not "presented in conclusory form . . . in terms of whether [the] defendant did or did not commit a particular offense," to avoid infringing on the defendant's right to a fair trial. *Commonwealth* v. *Tanner*, 45 Mass. App. Ct. at 581. See *Commonwealth* v. *Andujar*, 57 Mass. App. Ct. 529, 531 (2003). See also Liacos, Brodin & Avery, Massachusetts Evidence § 7.3.3, at 131 (7th ed. Supp. 2005) ("Given the apparent confusion created by these cases, and the continued elicitation of such testimony by prosecutors, it may be time for the appellate courts to resolve this problem with a clear statement that the 'consistent with' language is unacceptable as an opinion on the defendant's guilt"). "Such testimony amounts to little more than vouching for the Commonwealth's position." *Commonwealth* v. *Tanner*, 45 Mass. App. Ct. at 581.[9]

A trial judge has discretion in handling a situation where improper expert testimony has been offered. See *Commonwealth* v. *Delgado*, 51 Mass. App. Ct. 661, 664 (2001) (judge promptly acted so as to transform answer into proper statement of opinion). Here, the judge did nothing to correct the improper opinion testimony, but merely instructed the jurors in his charge that it was their role to assess the credibility of any witness.

In the end, testimony of the Commonwealth's expert witness (Sergeant Kiley) was laced with improper opinions that could be understood by the jury as a direct comment as to guilt.[10]

---

[9]It cannot be gainsaid: "When the evidence comes from the mouth of a police expert witness, and so bears an official imprimatur, the likelihood for prejudice is great." *Commonwealth* v. *Tanner*, 45 Mass. App. Ct. at 581.

[10]Though Sergeant Kiley was never expressly qualified by the judge as an expert, it is implicit that he testified as an expert. *Commonwealth* v. *Rivera*, 425 Mass. 633, 644 (1997).

Measured by an abuse of discretion standard, see *Commonwealth* v. *Johnson*, 410 Mass. at 202, admission of the challenged opinion evidence improperly intruded on the jury's fact-finding role. See *Commonwealth* v. *Woods*, 419 Mass. 366, 375-376 (1995). Moreover, the improper testimony appears to have been inextricably related to the defendant's decision to testify, which we now address.

3. *Ineffective assistance of counsel.*[11] Measured by the *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), test, the defendant has met his burden to show, on the record, that his counsel's trial performance was seriously marred by lack of proper preparation. It was a grave error for counsel to call the defendant to testify, and then pose questions on direct examination which left his client vulnerable to a predictably devastating cross-examination.

"The right to testify on one's own behalf in a criminal case is fundamental." *Commonwealth* v. *Degro*, 432 Mass. 319, 335 (2000). That right, however, is acknowledged to be counterpoised by the defendant's fundamental right not to testify, see *Commonwealth* v. *Waters*, 399 Mass. 708, 716 (1987); *Commonwealth* v. *Medina*, 64 Mass. App. Ct. 708, 723 (2005), and a decision whether to testify has been understood as "an important strategic decision made by the defendant with the advice of counsel." *Commonwealth* v. *Waters*, 399 Mass. at 716.

Trial counsel should have been aware of the existence of the defendant's prior cocaine conviction, and ought to have avoided a line of questioning during direct examination that invited the prosecutor to shatter the defendant's credibility by use of the defendant's prior conviction of cocaine distribution. Here, trial counsel's performance "fell measurably below" conduct expected of "an ordinary fallible lawyer," which "likely deprived the defendant of an otherwise available, substantial

---

[11] Though no motion for a new trial has been filed, we exercise our discretion to review the claim of ineffective assistance of counsel on direct appeal because the factual basis of the claim is apparent on the record before us. See *Commonwealth* v. *Vickers*, 60 Mass. App. Ct. 24, 33 n.9 (2003).

ground of defen[s]e." *Commonwealth* v. *Saferian*, 366 Mass. at 96.[12]

We conclude that the improper opinion evidence that took the form of an improper direct expression by a Commonwealth expert as to the guilt of the defendant, combined with ineffective assistance of counsel, requires us to reverse the two drug-related convictions and remand the matter to the District Court for a new trial.[13]

*Judgments reversed.*

*Verdicts set aside.*

---

[12]This is not a situation where there is a need to explore what advice had been furnished by counsel to the defendant as to whether the defendant should testify at trial. Compare *Commonwealth* v. *Kelly*, 57 Mass. App. Ct. 201, 209-210 (2003).

[13]As to the defendant's claim based on the Commonwealth's introduction of a suppressed hearsay statement, we are satisfied the judge remedied the error by delivering a prompt and forceful curative jury instruction. While the Commonwealth's misstep was serious and ought not to have happened since it was well aware of the suppression order, a mistrial was not in order here due to the judge's quick action, and the less than lethal character of the statement. See *Commonwealth* v. *Gallagher*, 408 Mass. 510, 517-518 (1990). We are confident that this will not recur at any new trial of this matter.