APPEALS COURT 
 
 COMMONWEALTH vs. ASHLIE LEWIS

 
 Docket:
 24-P-825
 
 
 Dates:
 September 10, 2025 – December 10, 2025
 
 
 Present:
 Neyman, Ditkoff, & Englander, JJ.
 
 
 County:
 Norfolk
 

 
 Keywords:
 Motor Vehicle, Operating under the influence. Intoxication. Evidence, Intoxication, Statistics. Search and Seizure, Inventory, Impoundment of vehicle. Constitutional Law, Equal protection of laws. Practice, Criminal, Motion to suppress.
 
 

 Complaint received and sworn to in the Wrentham Division of the District Court Department on September 4, 2019.
 A pretrial motion to suppress evidence, filed on October 30, 2020, was heard by Thomas L. Finigan, J., and a motion for reconsideration was heard by him; a pretrial motion to suppress evidence, filed on March 20, 2023, also was heard by him; and the case was tried before Julianne Hernon, J.
 Ian S. Kahanowitz for the defendant.
 Caleb J. Schillinger, Assistant District Attorney, for the Commonwealth.
 NEYMAN, J.  Following a jury trial in the District Court, the defendant, Ashlie Lewis, was convicted of operating a motor vehicle under the influence of intoxicating liquor (OUI).  On appeal she argues that a judge erred in denying her motion to suppress evidence from an "illegal inventory search," and her motion to suppress evidence under Commonwealth v. Long, 485 Mass. 711 (2020).  Discerning no errors, we affirm. 
 Background.  1.  Facts.  We summarize the facts as found by the motion judge after an evidentiary hearing on the defendant's motion to suppress, supplemented with uncontested evidence from the record.  See Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015).  On September 3, 2019, at approximately 2:45 P.M., a Walpole police officer (responding officer) received a 911 dispatch "for a motor vehicle in the Town Fair Tire parking lot, occupant inside, unresponsive," with the driver "slumped over the wheel."[1]  Upon arrival, the responding officer, along with the Walpole police chief who was already at the scene, saw a white Chrysler sedan parked in the Town Fair Tire lot, "across two marked spaces."[2]  The vehicle "was partially blocking travel in the lot of the tire store, which was open for business," and "partially blocking the entrance."
 The officers approached the vehicle, saw that it was "running," and "observed the sole occupant to be an unresponsive female in the driver's seat" who was "passed out behind the wheel."  The officers knocked on the window and yelled to "get her attention."  After approximately one minute, the driver (the defendant), a Black woman, "pawed" at the door for some time before unlocking the vehicle.  The responding officer reached in, turned off the ignition for safety purposes, and asked the defendant if she knew where she was.  The defendant responded that "she did but couldn't tell [him] where," and could not tell him where she was coming from or where she was going.  The defendant denied that she had been drinking.
 While he spoke to the defendant, the responding officer "observed her movements to be slow," detected an odor of alcohol from her, and saw that her eyes were bloodshot and glassy.  He asked her to perform field sobriety tests, but she declined.  Emergency medical technicians (EMTs) arrived at the scene to check the defendant's vital signs.  Soon thereafter, the responding officer arrested the defendant for OUI and transported her to the police station.
 The responding officer arranged to have the defendant's vehicle towed from the scene because "[i]t was in a parking lot of a business that was open to the public, not in a spot, partially blocking the entrance, and there was nobody to take possession of it."  Prior to the tow, the responding officer conducted an inventory of the vehicle pursuant to the Walpole police department's written inventory policy (inventory policy).[3]  During the inventory process he found an open bottle of Tito's vodka.
 2.  Procedural history.  On September 4, 2019, a criminal complaint issued from the District Court charging the defendant with, inter alia, OUI and possession of an open container of alcohol in a motor vehicle.  On October 30, 2020, the defendant moved to suppress the vodka bottle and other evidence obtained during the inventory search.  After conducting an evidentiary hearing, the motion judge issued comprehensive findings of fact and rulings of law denying the motion.  The defendant moved to reconsider the denial of the motion to suppress, which the motion judge denied.
 On March 20, 2023, the defendant filed a motion pursuant to Long, 485 Mass. 711 (Long motion), claiming that the evidence obtained by the officers stemmed from an illegal search and seizure based on the defendant's race.  Following a nonevidentiary hearing, the same motion judge issued a written decision denying the Long motion.
 In October of 2023, the case proceeded to trial at which a jury were unable to reach a verdict on the OUI count.[4]  Following a retrial in March of 2024, a second jury found the defendant guilty of OUI.[5]  The defendant appealed therefrom.
 Discussion.  1.  Inventory search.  The defendant contends that the officers violated her rights under the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights by exceeding the scope of a lawful wellness check and violating the terms of the inventory policy.  Her arguments are unavailing.
 In reviewing a ruling on a motion to suppress evidence, we accept the judge's subsidiary findings of fact absent clear error and leave to the judge the responsibility of determining the weight and credibility to give to testimony presented at the motion hearing.  See Commonwealth v. Wilson, 441 Mass. 390, 393 (2004).  "We review independently the application of constitutional principles to the facts found."  Id.
 The defendant first argues that once the officers determined that the defendant's well-being was not in question it was unreasonable, as a matter of law, to conduct any further investigation.  The claim fails because it is inconsistent with the motion judge's findings of fact.[6]  The motion judge found that in response to a 911 call the officers found the defendant in the driver's seat of a running vehicle, unresponsive, and failing to react to knocking on her window from the officers.  She then had difficulty unlocking the vehicle, and could not state where she was, or where she was going.  She also exhibited classic symptoms of alcohol intoxication including an odor of alcohol emanating from her person, glassy and bloodshot eyes, and slow movements.  See, e.g., Commonwealth v. Jewett, 471 Mass. 624, 636 (2015), abrogated on other grounds by Lange v. California, 594 U.S. 295 (2021); Commonwealth v. Gallagher, 91 Mass. App. Ct. 385, 392 (2017).  Finally, her vehicle was parked, in essence, across two parking spaces, perpendicular to the marked lines, and partially blocking one of the entrances to the lot.  The record supports these findings and, here, there was nothing unreasonable about the officers' conduct.  To the contrary, as the motion judge found, the officers' observations of the scene and of the defendant's conduct provided reasonable suspicion to believe that the defendant was operating under the influence of alcohol and justified the exit order from the vehicle.  See Commonwealth v. Blais, 428 Mass. 294, 297-298 (1998). 
 The defendant also contends that the police violated section IV, part A(2)(b) of the inventory policy, which states, "An inventory shall not be conducted in the following situations: . . .  The vehicle is not to be removed and does not impede traffic flow and is not illegally parked."
 The burden is on the Commonwealth to establish that impoundment was reasonably necessary and effectuated in accordance with written policies or procedures.  See Commonwealth v. Ferrara, 496 Mass. 483, 485 (2025), citing Commonwealth v. Oliveira, 474 Mass. 10, 13-14 (2016).  "The impoundment of a vehicle for noninvestigatory reasons is generally justified if supported by public safety concerns or by the danger of theft or vandalism to a vehicle left unattended" (citation omitted).  Commonwealth v. Eddington, 459 Mass. 102, 108 (2011).  
 Here, the Commonwealth satisfied its burden.  Contrary to the defendant's argument, there was abundant evidence, credited by the motion judge, that "the vehicle was partially blocking travel in the lot of the tire store," and "it was clear the vehicle operated by the defendant was not parked in a marked space, rather appeared to have pulled off the roadway and come to rest near the entrance to an open business."  Moreover, "[c]ommon sense and public safe[t]y dictated that the police could not abandon the defendant's vehicle in an operating business lot, partially blocking the entrance."  We also note that the officers were not obligated to make alternative arrangements for the vehicle.  Indeed, the vehicle operated by the defendant was owned by another person who was not at the scene and there was no evidence that the defendant made any request to contact the owner of the vehicle.  See Ferrara, 496 Mass. at 486 (rejecting argument that officers had affirmative duty to offer alternatives to impoundment or inventory search process where inventory policy required no such inquiry).[7]  Accordingly, the officers did not violate the terms of the inventory policy, and the judge did not err in denying the motion to suppress.
 2.  Long motion.  The defendant next argues that the motion judge erred in denying her selective enforcement claim under Long, 485 Mass. at 724-725.  For the reasons stated below, the claim fails.  
 "[S]elective enforcement occurs when there is 'discriminatory policing in the investigatory phase of a case.'"  Commonwealth v. Rodriguez, 496 Mass. 627, 633 (2025), quoting Commonwealth v. Dilworth, 494 Mass. 579, 587 (2024).  Law enforcement decisions "based on an unjustifiable standard such as race, religion or other arbitrary classification" are incompatible with the equal protection guarantee under arts. 1 and 10 of the Massachusetts Declaration of Rights, which "prohibit[s] discriminatory application of impartial laws" (citations omitted).  Rodriguez, supra.  The remedy for a successful challenge to selective enforcement "is suppression of the evidence obtained via discriminatory enforcement."  Id.
 Selective enforcement claims are evaluated under a burden-shifting framework wherein a defendant bears the initial burden to establish, by motion, a "reasonable inference that the officer's [enforcement] decision . . . was motivated by race or another protected class" (citation omitted).  Rodriguez, 496 Mass. at 633.  "To establish a reasonable inference of such motivation, 'the defendant must point to specific facts from the totality of the circumstances.'"  Id. at 634, quoting Long, 485 Mass. at 713.  "A bald allegation of selective enforcement, based only on membership in a constitutionally protected class, would not suffice."  Commonwealth v. Robinson-Van Rader, 492 Mass. 1, 17 (2023).  If the defendant has met her initial burden of producing "evidence upon which a reasonable person could rely to infer that the officer discriminated on the basis of the defendant's race," Long, supra at 723-724, the burden shifts to the Commonwealth "to rebut the defendant's initial inference of selective enforcement by 'establishing a race-neutral reason' for [the challenged police conduct]."  Rodriguez, supra at 638, quoting Robinson-Van Rader, supra.
 In the present case, the defendant filed a Long motion seeking to suppress her statements and the bottle of vodka found during the search of the vehicle.[8]  The Long motion was accompanied by the report of an expert retained by the defendant.  The expert reviewed "citation data" of the responding officer and summarized her findings in a report submitted with the Long motion.[9]
 Following a hearing, the motion judge issued findings of fact and rulings of law and denied the motion.  In his analysis, the motion judge first assumed without deciding that the test established under Long applies in the present case even though "no stop took place."  The motion judge was correct to do so.  As the Supreme Judicial Court recently held, "the equal protection standard established in Long for traffic stops applies equally to pedestrian stops and threshold inquiries, as well as other selective enforcement claims challenging police investigatory practices."  Rodriguez, 496 Mass. at 634, quoting Robinson-Van Rader, 492 Mass. at 18.  
 Next, the motion judge found that the defendant had failed to meet her burden of establishing a reasonable inference of selective enforcement.  Specifically, the motion judge found that the statistical data provided by the defendant was virtually identical for white motorists versus Black motorists, and otherwise "unpersuasive."  See note 9, supra.  Nonetheless, the motion judge noted that he had "the benefit of the testimony of the arresting officer" from the hearing on the prior motion to suppress evidence, applied the second step of the burden-shifting framework, and found "no suggestion that [the] officer's actions towards the defendant were other than those of a conscientious police officer attempting to ascertain the well-being of the subject of a 911 call, to determine whether her incapacitation was due to medical concerns, intoxication, or some combination thereof."
 Although the motion judge found the statistical evidence to be unpersuasive, for purposes of our analysis we will assume, without deciding, that the evidence was adequate to satisfy the defendant's burden at the first step of the Long analysis.  Going to the second step, as the motion judge did here, the record supports his determination that race-neutral reasons prompted the officers' actions.  Specifically, as the motion judge found, the arresting officer, along with the police chief, responded to a 911 call regarding an unresponsive operator of a vehicle, "slumped over the wheel"; found the vehicle parked across marked lines and "partially blocking the entrance" to an open business; found the defendant "passed out behind the wheel" of the vehicle; saw her having difficulty unlocking the door to the vehicle; and saw her exhibit classic indicia of intoxication prior to asking her to perform field sobriety tests and arresting her.
 In addition, the motion judge explicitly incorporated his findings from the prior suppression hearing into his findings on the Long motion.  Therein, he found, inter alia, that "the officers were justified in approaching the defendant" in view of the real time report relaying a "first hand observation that the defendant was passed out behind the wheel of her vehicle"; that the officers had at least reasonable suspicion that the defendant was impaired, justifying the responding officer's "decision to ask the defendant to step from the vehicle and offer field sobriety tests"; and that "[c]ommon sense and public safe[t]y dictated that the police could not abandon the defendant's vehicle in an operating business lot, partially blocking the entrance."  The judge credited all these race-neutral reasons supporting the officer's actions -- i.e., the approach to the vehicle, inquiry of the defendant, and ensuing arrest and search -- and the record supports these findings.  See Robinson-Van Rader, 492 Mass. at 22 (pedestrian stop supported by race-neutral reason where defendant and his companion matched physical description of persons fleeing recent nearby shooting); Commonwealth v. Stroman, 103 Mass. App. Ct. 122, 132 (2023) ("judge holding the evidentiary hearing must, as the judge did here, carefully assess the officer or officers' credibility and determine . . . whether the stop was truly made without knowledge or consideration of race").  In light of these findings, the judge reasonably determined that the police actions were motivated by the evidence and not by the defendant's race.  Therefore, there was no error in the denial of the Long motion.[10]  
Judgment affirmed.
Footnotes
 [1] An audio recording of the 911 call was admitted in evidence and played at the hearing.
 [2] According to a service manager who was working at the Town Fair Tire, the vehicle operated by the defendant was parked "across two spots, like the opposite way you're supposed to park; it was going across."
 [3] A copy of the inventory policy was entered in evidence at the hearing on the motion to suppress.
 [4] The first trial judge, who also was the motion judge, found the defendant responsible for the open container infraction.
 [5] A different judge presided over the second trial.
 [6] The defendant does not challenge the motion judge's findings of fact on appeal, and, in any event, the evidence adduced at the motion hearing supports the judge's findings.   
 [7] Section IV, part A(3) of the inventory policy states that officers should allow an alternative arrangement to towing of a vehicle "[w]hen the operator is arrested, and proposes that the vehicle be turned over to an identified person who is not under arrest or otherwise incapacitated and who agrees to take charge of the vehicle . . . if it is within reason based on the circumstances."  Here there was no evidence at the motion hearing that the defendant proposed to turn over the vehicle to another person.  
 [8] On the record before us, it is unclear whether the defendant's Long motion challenged the responding officer's approach to the vehicle, exit order, arrest, search of the vehicle, or some combination thereof.  In any event, as discussed infra, the Long motion protocol applies to stops, threshold inquiries, and "other selective enforcement claims challenging police investigatory practices."  Rodriguez, 496 Mass. at 634, quoting Robinson-Van Rader, 492 Mass. at 18.
 [9] The expert found, inter alia, that for the years 2014 to 2022, the responding officer issued warnings to 69.9 percent of white motorists whom he had cited, versus 64.2 percent of Black motorists he had cited; issued civil citations to 20.1 percent of white motorists he had cited versus 20.8 percent of Black motorists he had cited; issued criminal citations to 5.1 percent of white motorists he had cited versus 5.7 percent of Black motorists he had cited; and arrested 4.9 percent of white motorists he had cited versus 9.4 percent of the Black motorists he had cited.
 [10] The defendant also argues that the evidence at her first trial was insufficient to support a conviction of OUI.  The evidence at trial was almost identical to the facts delineated in the background section of this decision, supra.  Viewed in the light most favorable to the Commonwealth, see Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979), there was ample evidence that the defendant operated a motor vehicle on a public way while under the influence of alcohol.  See Gallagher, 91 Mass. App. Ct. at 390-393.