## COMMONWEALTH vs. VINICIO RODRIGUEZ.

No. 08-P-1177.

Plymouth. April 8, 2009. - September 25, 2009.

Present: KAFKER, GREEN, & GRAHAM, JJ.

*Controlled Substances. Narcotic Drugs. "School Zone" Statute. Practice, Criminal,* Grand jury proceedings, Motion to suppress, Voluntariness of statement, Confrontation of witnesses. *Grand Jury. Evidence,* Grand jury proceedings, Result of illegal interrogation, Certificate of drug analysis, Redirect examination. *Constitutional Law,* Reasonable suspicion, Probable cause, Confrontation of witnesses. *Probable Cause. Search and Seizure,* Reasonable suspicion, Probable cause.

A Superior Court judge properly denied the criminal defendant's motion to dismiss an indictment charging him with possession of cocaine with intent to distribute in a school zone, where the evidence presented to the grand jury, although limited, was sufficient to permit the grand jury to believe that the defendant had committed the offense. [237-238]

A Superior Court judge properly denied the criminal defendant's pretrial motion to suppress statements he made, while in custody, to a police detective, where a Miranda warning was not required in the circumstances, in that a reasonable person would not have perceived the detective's question as designed to elicit an incriminating response, and therefore, the defendant's unresponsive, incriminating apology was spontaneous [238-240]; likewise, the judge properly denied the defendant's pretrial motion to suppress evidence seized from him, where the State troopers who stopped him had more than enough information to establish reasonable suspicion (i.e., they knew that the defendant was the subject of a narcotics investigation and was identified in the affidavit in support of a search warrant), and the defendant's attempt to swallow something when the troopers approached, and his subsequent spitting out of five bags of what appeared to be cocaine, gave the troopers probable cause to arrest him [240].

At the trial of various drug charges, the admission in evidence of certificates of analysis from the State crime laboratory without testimony from an analyst violated the defendant's right to confrontation under the Sixth Amendment to the United States Constitution [240-241]; with respect to the indictment charging trafficking in cocaine with a net weight of one hundred grams or more but less than 200 grams, in the absence of other direct or indirect evidence of the weight of the cocaine, this court could not conclude that the admission of the relevant certificates of analysis was harmless [241-242]; on the other hand, the admission of the relevant certificates was harmless beyond a reasonable doubt with respect to the

indictments charging possession of cocaine with intent to distribute and possession of cocaine with intent to distribute within a school zone, in that on these charges, the fact finder did not need to calculate the weight of the substance, and the defendant's admission to drug dealing and circumstantial evidence overwhelmingly proved these charges [242-244]; finally, with respect to the charge of possession of marijuana, the proof that the substance was marijuana was too dependent on the erroneous admission of the certificate to be harmless beyond a reasonable doubt [244-245].

At the trial of indictments charging, inter alia, possession of cocaine with intent to distribute within a school zone, the judge did not abuse her discretion in allowing the Commonwealth to introduce testimony about the school zone measurement for the first time on redirect examination. [245-246]

INDICTMENTS found and returned in the Superior Court Department on June 4, 2004.

A motion to dismiss was heard by *Suzanne V. DelVecchio*, J.; a pretrial motion to suppress evidence was heard by *Paul E. Troy*, J.; and the cases were heard by *Carol S. Ball*, J.

*William S. Smith* for the defendant.

*Audrey Anderson Kachour*, Assistant District Attorney, for the Commonwealth.

KAFKER, J. Following a bench trial, the defendant, Vinicio Rodriguez, was found guilty of trafficking in cocaine in an amount more than 100 grams, but less than 200 grams; possession of cocaine with intent to distribute; possession of cocaine with intent to distribute in a school zone; and possession of marijuana. He now challenges his convictions on several grounds, including the admission in evidence of drug certificates of analysis without testimony from an analyst, which was declared unconstitutional by the Supreme Court of the United States in *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527 (2009).

In March, 2004, the Brockton police department was investigating a suspected cocaine delivery service operating out of the defendant's residence located at 103 Vesey Street in Brockton. On April 9, 2004, while waiting to execute a search warrant for 103 Vesey Street, police officers observed the defendant drive up to the house, briefly go inside, and then drive toward Main Street. The defendant drove to 1380 Main Street where State troopers, who had been informed of his likely destination, were waiting inside. The troopers arrested the defendant in the lobby after he attempted to swallow five bags of suspected cocaine.

The defendant was transported back to 103 Vesey Street, as Brockton police officers executed the search warrant there. That search turned up additional suspected narcotics and drug paraphernalia. Additional facts will be set forth as necessary to address the particular legal issues raised.

On appeal, the defendant challenges the denial of his motions to dismiss the school zone charge for insufficient evidence presented to the grand jury, to suppress statements made to a police officer at 103 Vesey Street, and to suppress evidence seized at 1380 Main Street. The defendant also contends that the trial judge erred by admitting certificates of drug analysis in evidence and allowing the Commonwealth to elicit testimony on the school zone measurement for the first time on redirect examination. For the reasons stated *infra,* we reverse the defendant's conviction of trafficking in cocaine and possession of marijuana and affirm his remaining convictions.

1. *Grand jury evidence.* The defendant first challenges the denial of his motion to dismiss the school zone charge on the basis that there was insufficient evidence presented to the grand jury to prove that his possession of cocaine with intent to distribute occurred within 1,000 feet of a school.

A detective testified before the grand jury that the defendant was followed back to 1380 Main Street. Without mentioning the address again, the detective described the stop and the arrest that occurred there. The following exchange then took place between the prosecutor and the detective:

> *Q*: "The location of 1381 Main Street, where is that in relation to the Brockton Christian School which is a school in the city of Brockton?"
>
> *A*: "It's directly across the street, within 500 feet of it."
>
> *Q*: "In fact, it was measured to be 361 feet; is that right?"
>
> *A*: "Yes."

No testimony was expressly provided regarding the distance between 1380 Main Street and the school or the configuration of the neighborhood. Rather, the Commonwealth argues that the prosecutor misspoke, or the grand jury transcript contained a

typographical error. Accordingly, the Commonwealth contends that the references to 1381 Main Street in the exchange between the prosecutor and the detective should be understood to refer to 1380 Main Street. This appears to be so. There was no reason to discuss the distance between 1381 Main Street and the school.[1]

Although the Commonwealth's evidence was limited, so was its burden of proof at the grand jury stage. "The evidence before the grand jury must consist of reasonably trustworthy information sufficient to warrant a reasonable or prudent person in believing that the defendant has committed the offense." *Commonwealth* v. *Roman*, 414 Mass. 642, 643 (1993). This evidence is "viewed in the light most favorable to the Commonwealth." *Commonwealth* v. *Levesque*, 436 Mass. 443, 444 (2002). Also, "an indictment is not to be dismissed merely because 'the evidence probably would not have been sufficient to overcome a motion for a required finding of not guilty at a trial.' " *Commonwealth* v. *Club Caravan, Inc.*, 30 Mass. App. Ct. 561, 567 (1991), quoting from *Commonwealth* v. *O'Dell*, 392 Mass. 445, 450 (1984).

In these circumstances, we conclude that the evidence was sufficient for the purposes of grand jury proceedings. Even if this was not just a transcription error, it was reasonable for the grand jury to infer that the detective was referring to 1380 Main Street, not 1381 Main Street, when he answered the prosecutor's question.[2] See *Corson* v. *Commonwealth*, 428 Mass. 193, 197 (1998) ("inferences need not be necessary, only reasonable and possible"). See also *Commonwealth* v. *Leitzsey*, 421 Mass. 694, 698 (1996) (sufficient evidence to indict even though grand jury transcripts reflected inaccurate testimony, possibly due to stenographic error).

2. *Statements at 103 Vesey Street.* The defendant claims that statements he made to a detective while in custody at 103 Vesey Street should have been suppressed because they were the result

---

[1]There was, however, no attempt to correct the grand jury transcript. Nor was evidence, as opposed to argument, presented to explain the error at the hearing on the motion to dismiss.

[2]Testimony that the school is 361 feet away from 1381 Main Street in an urban area would suggest that it is also less than 1,000 feet away from 1380 Main Street. The margin of error here is greater than the length of two football fields, and the grand jury could permissibly infer that 1380 and 1381 Main were closer to each other than that margin.

of an interrogation or the functional equivalent thereof. In reviewing a motion to suppress, the judge's findings of fact are "binding in the absence of clear error." *Commonwealth* v. *Alvarado*, 420 Mass. 542, 544 (1995). However, we "independently review[] the correctness of the judge's application of constitutional principles to the facts found." *Commonwealth* v. *Gentile*, 437 Mass. 569, 573 (2002), quoting from *Commonwealth* v. *Eckert*, 431 Mass. 591, 593 (2000).

We summarize the facts found by the suppression motion judge. Detective DiLiddo lived across the street from 103 Vesey Street in 2004 and had spoken to the defendant and Angie, the mother of the defendant's children, while they were neighbors. After the defendant was arrested, Angie told Detective DiLiddo that she was worried about not having enough money. Detective DiLiddo then approached the defendant, who was handcuffed and in custody at 103 Vesey Street, and, without advising him of his Miranda rights, asked if he had any extra money for his children. In response, the defendant "apologized to Detective DiLiddo for conducting business across the street from him and said he meant no disrespect"; he gave the detective approximately one hundred dollars, which the detective then gave to Angie.

Miranda warnings are necessary when a suspect is subject to express custodial interrogation or its functional equivalent. *Commonwealth* v. *Torres*, 424 Mass. 792, 796-797 (1997). *Commonwealth* v. *Braley*, 449 Mass. 316, 323-324 (2007). A functional equivalent to interrogation encompasses "any words or actions on the part of police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Commonwealth* v. *Torres*, *supra* at 797, quoting from *Rhode Island* v. *Innis*, 446 U.S. 291, 301 (1980). The inquiry does not center on the subjective intent of the particular police officer but rather focuses on an objective assessment whether a reasonable person in the suspect's position would perceive the police statements and conduct as interrogation. *Commonwealth* v. *Torres*, *supra* at 797. *Commonwealth* v. *Braley*, *supra* at 324.

A reasonable person would not perceive Detective DiLiddo's question as designed to elicit an incriminating response. The detective, after speaking with Angie, only asked the defendant, who was already in police custody, if he had any money for his

children. The defendant's unresponsive, incriminating apology was spontaneous, and thus a Miranda warning was not required for the statements to be admissible.[3] *Id.* at 325. The denial of the defendant's motion to suppress the statements was therefore proper.

3. *Evidence seized at 1380 Main Street.* The defendant next argues that evidence seized from him at 1380 Main Street should have been suppressed because the State troopers lacked reasonable suspicion to stop him and probable cause to arrest him.

Reasonable suspicion to stop must be "based on specific, articulable facts and reasonable inferences, that the defendant had committed, was committing, or was about to commit a crime." *Commonwealth* v. *Deramo*, 436 Mass. 40, 42 (2002), quoting from *Commonwealth* v. *Willis*, 415 Mass. 814, 817 (1993). The troopers knew that the defendant was the subject of a narcotics investigation and was identified in the affidavit in support of the search warrant. Because they had more than enough information to establish reasonable suspicion, the troopers had the right to stop and speak with the defendant. See *Commonwealth* v. *Charros*, 443 Mass. 752, 764-765, cert. denied, 546 U.S. 870 (2005).

To establish probable cause to arrest, the police officer must be aware of facts and circumstances that "warrant a person of reasonable caution in believing that the defendant had committed or was committing a crime." *Commonwealth* v. *Va Meng Joe*, 425 Mass. 99, 102 (1997) (citation and quotation omitted). As the troopers approached him, they observed the defendant attempting to swallow something. Based on their training and experience, the troopers reasonably believed that the defendant was trying to swallow narcotics. Consequently, they could take reasonable steps to prevent him from doing so. See *Commonwealth* v. *Moses*, 408 Mass. 136, 141 (1990). Once the defendant spit out five bags of what appeared to be cocaine, the troopers had probable cause to arrest him. *Commonwealth* v. *Va Meng Joe, supra.*

4. *Certificates of analysis.* At trial, over the defendant's objections, five certificates of analysis from the State crime laboratory

---

[3] While the defendant properly argues that the amount of money found on a person suspected of drug distribution is evidence of intent to distribute, the money that the defendant gave Detective DiLiddo would have been inevitably discovered during the booking process. There was no need to question him about it.

were introduced by the Commonwealth and admitted in evidence.[4] The certificates stated that the substances seized by police and connected to the defendant were cocaine of specific weights and marijuana. The admission of this evidence without testimony from the analyst was constitutional error, as it violated the defendant's rights under the confrontation clause of the Sixth Amendment to the United States Constitution. *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527, 2532 (admission of laboratory certificates without live testimony by analyst violated confrontation clause of the Sixth Amendment).

"The admission of testimony obtained in violation of a defendant's confrontation rights will not amount to reversible error if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Commonwealth* v. *Rosario*, 430 Mass. 505, 511 (1999) (citation and quotation omitted). A court must determine "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction," or put differently, "whether overwhelming evidence of the defendant's guilt exists without the erroneously admitted evidence." *Commonwealth* v. *Perez*, 411 Mass. 249, 260 (1991). In making this determination, the Supreme Judicial Court has identified the following factors to consider: "(1) the relationship between the evidence and the premise of the defense; (2) who introduced the issue at trial; (3) the weight or quantum of evidence of guilt; (4) the frequency of the reference; and (5) the availability or effect of curative instructions." *Commonwealth* v. *Isabelle*, 444 Mass. 416, 419 (2005), quoting from *Commonwealth* v. *Mahdi*, 388 Mass. 679, 696-697 (1983).

We begin with the convictions involving cocaine. The conviction of trafficking in a net weight of 100 grams or more but less than 200 grams related to the cocaine found at 103 Vesey Street. The possession with intent to distribute conviction, as well as the school zone violation, involved the five bags that the defendant attempted to swallow at 1380 Main Street.

With respect to the trafficking conviction, in the absence of other direct or indirect evidence of the weight of the cocaine,

---

[4]Specifically, the certificates identified (1) 1.84 grams of cocaine taken from a group of five plastic bags; (2) 2.93 grams of cocaine; (3) 106.54 grams of cocaine; (4) 30.99 grams of cocaine; and (5) marijuana. The drugs were admitted in evidence.

Commonwealth *v.* Rodriguez.

we cannot conclude that the admission of the certificates of cocaine analysis was harmless. The certificates established that there were over 106 grams of cocaine in one bag and over thirty grams in other containers. See note 4, *supra.* Without the certificates, however, determining the weights of the amounts at issue, particularly whether they were over or under 100 grams, would involve too much guesswork on too close a question in these circumstances. Compare *Commonwealth* v. *Connolly,* 454 Mass. 808, 831-832 (2009) (harmless error to introduce certificate where jury could determine that "large, hard ball" of cocaine weighed more than four ounces, and officer provided testimony converting ounces to grams). Consequently, there was not overwhelming other evidence of guilt of trafficking in a net weight of 100 grams or more.[5] We therefore reverse the trafficking conviction. The Commonwealth may, however, retry the defendant on this count. See *Kater* v. *Commonwealth,* 421 Mass. 17, 18 (1995) ("If the evidence admitted at the trial was sufficient to send the case to the jury, but is insufficient to send the case to the jury if all improperly admitted evidence is disregarded, double jeopardy principles nevertheless do not bar a retrial"). See also *Commonwealth* v. *DiBenedetto,* 414 Mass. 37, 45 (1992), *S.C.,* 427 Mass. 414 (1998), and cases cited therein (same).

We next consider the question whether the admission of the certificates by the Commonwealth was harmless beyond a reasonable doubt on the cocaine distribution and school zone counts related to the substance the defendant sought to swallow at 1380 Main Street. We again begin our analysis with the other evidence of guilt. On the distribution charge, unlike the trafficking count, the fact finder did not need to calculate the weight of the substance. In this context, the defendant's admission to drug dealing, as the police searched his residence, becomes significant. As Detective DiLiddo testified, "At that point [the defendant] had apologized to me for the conduct that was going on," and he "said that just his acts and things were very stupid as far as doing the drug dealing across the street." The detective later explained, "Well, most of the confession, I guess you'd say was first an apology to me and my family for selling drugs."

---

[5]Where weight has been contested and the certificate is necessary to prove the amount at issue, we need not apply the full five-factor harmless error analysis to this conviction.

There was also ample circumstantial evidence of cocaine distribution. See *Melendez-Diaz* v. *Massachusetts*, *supra* at 2542 n.14 (in declining to decide whether admission of drug certificate was harmless, United States Supreme Court went on to note that "[t]oday's opinion . . . in no way alters the type of evidence [including circumstantial evidence] sufficient to sustain a conviction"). The defendant was apprehended by State troopers at 1380 Main Street after attempting to swallow five bags of suspected cocaine. Detective Thomas Keating, who was qualified as an expert, explained that powdered cocaine is typically packaged for sale as "forties and fifties" in "plastic baggies" and that delivery services, which "meet usually in an isolated neighborhood [or] a parking lot . . . [or] go right to the location where the person is," are commonly used to distribute powdered cocaine.[6] He further testified that drug dealers often attempt to swallow bags of cocaine if confronted by police while en route to these locations. The defendant's behavior prior to and during his apprehension in the lobby of the apartment building was thus consistent with possession with intent to distribute cocaine.

Further circumstantial evidence was found in the defendant's basement at 103 Vesey Street. There the items seized included a coffee creamer container holding suspected cocaine and a metal tin containing a scale, bags of suspected cocaine, a green herb suspected to be marijuana, and $1,000. Police also seized a box of sandwich bags, three sifters, and a "large bag" of suspected cocaine. At least some of the substances were field tested and found to be cocaine. Detective DiLiddo so testified on cross-examination without objection. It is not, however, clear from the record who field tested the cocaine. Contrast *Commonwealth* v. *Connolly*, 454 Mass. at 831 (where officers who field tested cocaine were identified and testified).

The trial defense itself further supports a finding of harmless error. Beyond objecting to the certificates, the premise of the defense was not so much the nature of the substance that the defendant tried to swallow, but whether the defendant possessed it for personal use, possibly during what counsel referred to as a "cocaine binge." See *Commonwealth* v. *Diaz*, 453 Mass. 266,

---

[6]Detective Keating had over eleven years of experience as a narcotics officer and had participated in over 200 cocaine investigations.

274 (2009). See also *Commonwealth* v. *Isabelle*, 444 Mass. at 419.

More problematic is the frequency of the references to the certificates. The Commonwealth's introduction of five different certificates of analysis compounded the effect of the error. Nonetheless, we conclude that even these multiple references to different certificates are neutralized by the overwhelming evidence of cocaine distribution in this case.[7]

In sum, the defendant's admission to drug dealing, his attempt to swallow the drugs in the lobby of 1380 Main Street, the expert testimony regarding the significance of the packaging and swallowing of the drugs, the seizure of drug paraphernalia and suspected cocaine in the defendant's basement, the uncontested testimony regarding field testing of the suspected substance as cocaine, and the defense itself, which raised the possibility of a cocaine binge, provided cumulative and overwhelming evidence of the defendant's guilt on the cocaine distribution charges. The erroneous admission of the certificates of analysis related to these charges was harmless beyond a reasonable doubt.

Finally, we address the defendant's conviction of possession of marijuana. This count was not a focal point of the trial and was addressed in an abbreviated fashion. A narcotics detective was called to the stand. After a few questions that established that he had been a police officer for twelve years and a narcotics officer for eight years, he testified that "a green herb" was found in the defendant's basement in the tin that also contained bags of suspected cocaine, a scale, and $1,000. The officer was not asked to describe the smell or other attributes of the green herb. Nor was he asked to identify it based on his experience as a narcotics officer. Unlike the detective who testified regarding the cocaine, his expertise was not in any way established beyond his years of experience as a narcotics officer. Thereafter, the suspected marijuana and the certificate of marijuana analysis were admitted, but without further explanation or even a direct connection being expressly made between the two. To clarify matters, the judge, who was the trier of fact, asked the detective who had identified the substance, "I'm sorry, that's [marijuana], right? That's

---

[7]We need not consider the last factor, the availability or effect of curative instructions, as this was a bench trial.

marijuana?" The detective replied in the affirmative. There was no objection to this exchange.

We conclude that the proof that the substance was marijuana was too dependent on the erroneous admission of the certificate to be harmless beyond a reasonable doubt. See *Commonwealth v. Isabella, supra* at 419. Here the Commonwealth relied almost exclusively on the certificate to prove that the substance was marijuana. There was little done to establish or apply the officer's expertise. Compare *Commonwealth* v. *Dawson,* 399 Mass. 465, 467 (1987); *Commonwealth* v. *Cantres,* 405 Mass. 238, 245-246 (1989). The judge was therefore dependent on the certificate, which the Commonwealth introduced over the defendant's objection.

The other relevant factors also favor the defendant. As previously discussed, the multiple certificates of analysis introduced by the Commonwealth compounded the effect of the error. Additionally, although the premise of the defense to the charge of possession of marijuana appeared, in part, to be that all the drugs in the basement belonged to other individuals, the defendant did not concede that the green herb was marijuana or otherwise undercut his defense. In these circumstances, the admission of the certificate of marijuana analysis was not harmless beyond a reasonable doubt.[8]

*5. Redirect examination.* The defendant's final claim is that the trial judge abused her discretion by allowing the Commonwealth to introduce testimony about the school zone measurement for the first time on redirect examination.[9]

While the purpose of redirect examination is to give witnesses an opportunity to explain or correct testimony given on cross-examination, redirect examination may exceed the scope of cross-examination.[10] *Commonwealth* v. *Hoffer,* 375 Mass. 369, 375 (1978). The trial judge has discretion to permit or limit questioning on redirect examination. *Commonwealth* v. *Smith,* 329 Mass.

---

[8]The defendant may be retried on this indictment. See *Kater* v. *Commonwealth,* 421 Mass. at 18.

[9]The Commonwealth admitted that its failure to discuss the measurement on direct examination resulted from oversight.

[10]The defendant's assertion that the scope of redirect cannot encompass an entirely new subject is unsupported. The defendant does not cite any case law.

477, 479 (1952). *Commonwealth* v. *Hoffer, supra.* To prove an abuse of the trial judge's discretion, the defendant must show prejudice. *Commonwealth* v. *Smith, supra.*

The defendant has not shown how the trial judge's ruling unfairly prejudiced him. The defendant had an opportunity to cross-examine Detective DiLiddo on his school zone measurement testimony. Moreover, even if the judge had sustained the defendant's objection, the Commonwealth could have recalled the detective or called another witness to testify about the distance between 1380 Main Street and the nearby school.[11] See *Commonwealth* v. *Shine,* 398 Mass. 641, 656 (1986) (prosecution permitted to reopen case and recall witness to introduce material evidence). The judge's time-saving decision to allow the detective's testimony during redirect examination did not constitute an abuse of discretion.

6. *Conclusion.* For the foregoing reasons, we reverse the judgments on the indictments charging the defendant with trafficking in cocaine and possession of marijuana and set aside the findings of guilty on those indictments. We affirm the remaining judgments.

*So ordered.*

---

[11]Detective DiLiddo was the last witness called on the first day of the trial. Over two weeks passed before the second day of trial, on which the Commonwealth called two additional witnesses, including another police detective.