## COMMONWEALTH vs. IRVING MADERA, JR.

No. 08-P-1391.

Essex. June 2, 2009. - January 22, 2010.

Present: DUFFLY, KANTROWITZ, & FECTEAU, JJ.

*Controlled Substances. Evidence,* Certificate of drug analysis, Expert opinion. *Constitutional Law,* Confrontation of witnesses, Assistance of counsel. *Practice, Criminal,* Harmless error, Argument by prosecutor, Assistance of counsel, Required finding. *Witness,* Expert.

At the trial of a criminal complaint charging, inter alia, unlawful possession of marijuana with intent to distribute, the erroneous admission in evidence of certificates of analysis, without testimony from an analyst, to prove that the substances in question were marijuana, although violative of the defendant's right to confront the witnesses against him, was harmless beyond a reasonable doubt, where the defense did not challenge the nature of the substance; where the evidence relevant to the nature of the substance independent of the drug certificates was overwhelming, and there was ample circumstantial evidence of marijuana distribution; and where the Commonwealth made no mention of the certificates during its closing argument. [156-160]

At the trial of a criminal complaint charging, inter alia, unlawful possession of marijuana with intent to distribute, neither the admission in evidence of testimony by the Commonwealth's expert that the defendant intended to distribute illicit substances nor the failure of counsel to object created a substantial risk of a miscarriage of justice, where the opinion, while not in approved form and improper in isolation, was based on a series of questions, properly expressed, that began with a question in proper form; where the opinion was grounded in the evidence; where the testimony was sufficiently explanatory and not so conclusory as to have warranted being struck from evidence if there had been an objection; and where the lack of an objection could have been a reasonable strategic choice of trial counsel. [160-164]

At the trial of a criminal complaint charging, inter alia, unlawful possession of marijuana with intent to distribute, the evidence was sufficient to demonstrate the defendant's constructive possession of the marijuana and paraphernalia found in a bedroom of an apartment where the defendant's girl friend lived, as well as the defendant's intent to distribute. [164-166]

COMPLAINT received and sworn to in the Lawrence Division of the District Court Department on July 17, 2007.

The case was tried before *Thomas M. Brennan,* J.

*Matthew S. Cameron* for the defendant.

*Kenneth Bresler,* Assistant District Attorney, for the Commonwealth.

Fecteau, J. The defendant appeals from his convictions by a District Court jury of unlawful possession of marijuana with intent to distribute, G. L. c. 94C, § 32C, and a controlled substance violation in a school zone, G. L. c. 94C, § 32J. He makes the following arguments on appeal. The defendant first argues that the judge erred in admitting drug certificates of analysis without testimony from an analyst. Next, with respect to the admission of expert testimony, he contends both that the testimony improperly exceeded its permissible bounds and that his counsel was ineffective for not objecting to it. Finally, he argues that his motion for a required finding of not guilty should have been granted because there was insufficient evidence of his possession of the marijuana. We affirm.

1. *Background facts.* Based on the evidence presented by the Commonwealth at trial, the jury could have found the following facts. On the evening of April 27, 2006, Lawrence police officers executed a search warrant at 294 Howard Street. As one officer knocked at the front door and announced the officers' presence, dogs were heard barking inside, and the officer asked that the dogs be secured. The officer heard people running around inside, but the door remained closed and the dogs unsecured. An entry team member at the apartment's back door tried the doorknob and found it open, and the officers entered the kitchen. Three pit bulls charged the police. Police subdued the dogs and secured the "very chaotic scene," which entailed leading people out of the apartment, some in handcuffs. There were approximately eight people in the apartment including the defendant[1] and his girlfriend, Darlene Choate.[2]

During the execution of the warrant, the police thoroughly

---

[1]In 2005, the defendant put his name on the gas bill. In the winter and early spring of 2006, the months before the search, the defendant was at the Howard Street apartment every day and stayed four or five nights a week. On the nights when he did not sleep at the apartment, he was there from around 2:00 to 10:00 p.m.

[2]Choate lived in the apartment with her mother, daughter, and younger son. Her older son stayed there on weekends and at other times.

searched the master bedroom at 294 Howard Street. They opened a sliding door to a headboard compartment of the bed and found a shoe box containing a plastic bag filled with vegetable matter (later identified as marijuana), a scale, a box of sandwich bags, and $465 in United States currency. They discovered an additional bag of marijuana between the mattress and the box spring of this bed and three other bags, one large and two smaller, near the bed. On a dresser, the officers also found two smoked "blunts," marijuana wrapped in cigar leaves, and several smoked "roaches," marijuana cigarettes. The defendant's driver's license — listing an address in Methuen — was also found on a nearby dresser in the master bedroom. All residents of 294 Howard Street, including Choate's seventeen and twenty-two year old sons, had regular access to the bedroom that she often shared with the defendant.

Although Choate testified that she was not aware of the marijuana and other paraphernalia found in her bedroom, she further testified that the money found there by police on April 27, 2006, did belong to her, as "[she's] the only one that has money in the house."[3] Also, according to Choate, at the time of her arrest in April, 2006, she smoked marijuana daily and received it from the defendant.

2. *Drug certificates of analysis.* As part of its case-in-chief, the Commonwealth introduced three drug certificates to prove that the substances found in the bedroom were, in fact, marijuana.[4] The admission of these certificates, without testimony from the analyst, was constitutional error and violated the defendant's right to confront witnesses under the Sixth Amendment to the United States Constitution. *Melendez-Diaz* v. *Massachusetts,* 129 S. Ct. 2527 (2009) (holding that admission of drug certificates of analysis, without opportunity for cross-examination, violates confrontation right under Sixth Amendment to United States

---

[3]She testified under an agreement with the district attorney's office by which she would receive a recommendation of probation in return for truthful testimony at the trial.

[4]The first certificate identified "5 plastic bags" containing "vegetable matter." Material from one of the bags was randomly selected and analyzed; it was found to be marijuana. The second and third certificates pertained to vegetable matter contained in one "cigar" and "burnt cigars," respectively. In both cases the substance was found to be marijuana.

Constitution). The defendant objected to the admission of the certificates; thus, we review whether this error was harmless beyond a reasonable doubt. In making this determination, we ask "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Commonwealth* v. *Perez*, 411 Mass. 249, 260 (1991), quoting from *Chapman* v. *California*, 386 U.S. 18, 24 (1967). See *Commonwealth* v. *Sinnott*, 399 Mass. 863, 872 n.8 (1987).[5] The Supreme Judicial Court has enumerated the following factors that may be considered when making such a determination: "(1) the relationship between the evidence and the premise of the defense; (2) who introduced the issue at trial; (3) the weight or quantum of evidence of guilt; (4) the frequency of the reference; and (5) the availability or effect of curative instructions." *Commonwealth* v. *Isabelle*, 444 Mass. 416, 419 (2005), quoting from *Commonwealth* v. *Mahdi*, 388 Mass. 679, 696-697 (1983). See *Commonwealth* v. *Diaz*, 453 Mass. 266, 275 (2009). "These factors are not exclusive or exhaustive. . . . Nevertheless, this scoreboard method to distinguish harmless from harmful error is useful." *Commonwealth* v. *Mahdi, supra* at 697.

Viewing these factors as a whole, we are persuaded that the Commonwealth met its burden of showing that the erroneous admission was harmless beyond a reasonable doubt. While the second of the five factors weighs against the Commonwealth (because the Commonwealth introduced the drug certificates), the remaining three relevant factors[6] weigh strongly against the

[5]This standard has been expressed in a number of ways: "[W]e analyze the case to see whether the error might have had an effect on the jury or contributed to the verdicts, and whether the Commonwealth's evidence was ' "merely cumulative" of evidence properly before the jury,' . . . or was overwhelming without the erroneously admitted evidence," *Commonwealth* v. *Dagraca*, 447 Mass. 546, 553 (2006), quoting from *Sinnott, supra*; and if the error " 'did not influence the jury, or had but very slight effect,' that is, if it was harmless beyond a reasonable doubt." *Commonwealth* v. *Diaz*, 453 Mass. 266, 275 (2009), quoting from *United States* v. *Agurs*, 427 U.S. 97, 112 (1976).

[6]We do not separately address the fifth factor pertaining to "the availability or effect of curative instructions." As we previously noted, "[t]he factor is designed to assess whether the jury were instructed in such a way as to reduce or eliminate the risk that they considered the erroneously admitted evidence in reaching their verdict." *Commonwealth* v. *Hollister*, 75 Mass. App. Ct. 729, 733 (2009). Here the judge instructed the jury in accordance with the law then in effect that the certificates could be considered as prima facie evidence that the substances were marijuana.

defendant. Based on our review of all the evidence, we conclude that the admission of the certificates was harmless beyond a reasonable doubt.

Turning to the first factor, which pertains to the relationship between the evidence and the defense, the defense theory was that the defendant did not possess the substance in question. The defendant did not challenge the nature of the substance but contended that the bags of marijuana found in the bedroom did not belong to him.[7]

Turning to the third factor, the weight of the evidence of guilt, here the evidence relevant to the nature of the substance independent of the drug certificates was overwhelming. Detective William Colantuoni and Sergeant Mark Ciccarelli, both of whom had extensive training and experience with narcotics investigations, identified the substance in the bags as marijuana. Colantuoni, who participated in the search, testified that he had been with the Lawrence police department (LPD) since 1996 and had been a detective since 2000. He described his duties as a detective and his training in crime scene and narcotics investigations. Ciccarelli testified at the trial as a nonpercipient expert witness concerning drug investigations. He testified that he had started with the LPD around 1989, became a detective in 2000, and was currently a detective sergeant of the street narcotics enforcement unit. He testified that he had attended extensive training sessions regarding narcotics investigations, had made over 1,000 arrests primarily involving narcotics, and had been involved in many aspects of drug investigations, from serving as an affiant of a search warrant to working in undercover capacities selling and buying drugs. Contrast *Commonwealth* v. *Rodriguez,* 75 Mass. App. Ct. 235, 244 (2009) ("Nor was [the testifying officer] asked to identify [the substance] based on his experience as a narcotics officer. . . . [H]is expertise was not in any way established beyond his years of experience as a narcotics officer").

Both Colantuoni and Ciccarelli opined, without objection, that the substances in question, already in evidence, were mari-

___

[7]While this factor weighs in favor of the Commonwealth, we do not place much weight on it in light of the then-existing law under *Commonwealth* v. *Verde,* 444 Mass. 279 (2005). See *Commonwealth* v. *Tyree,* 455 Mass. 676, 704 n.43 (2010); *Commonwealth* v. *Hollister,* 75 Mass. App. Ct. at 732.

juana. "Proof that a substance is a particular drug need not be made by chemical analysis and may be made by circumstantial evidence." *Commonwealth* v. *Dawson*, 399 Mass. 465, 467 (1987). Specifically, Colantuoni testified that he found marijuana in three locations near Choate and the defendant's bed: in a shoe box in the headboard of the bed, between the mattress and box spring, and near the bed.

With respect to the shoe box found in the headboard of the bed, Colantuoni testified that in it was a "green-herb substance, which [he] believed to be marijuana," as well as a box of sandwich bags, a digital scale, and $465 in cash. He testified that the substances found between the mattresses as well as in the other bags were also marijuana. He further testified that he found the marijuana in the headboard on the left side of the bed and that the marijuana between the mattresses was also located on the left side of the bed. Finally, he identified the smoked blunts and roaches found on the dresser in the bedroom as burnt marijuana.

The prosecutor also presented the evidence to Ciccarelli, who opined, based on his training and experience, that the substance in the bags was marijuana. Specifically, he testified that, in his estimation, there was about one-half pound of marijuana found inside the shoe box and one-quarter pound of marijuana found between the mattresses. With respect to the three bags found near the bed, he testified that the substance within the bag was "loose marijuana" and explained that the individual packages of marijuana within the bag that were tied up with twist ties indicated that they were meant to be sold at some point. He also identified the smoked roaches and blunts as containing marijuana.

Additionally, there was ample circumstantial evidence of marijuana distribution. *Commonwealth* v. *Rodriguez, supra* at 243. Along with the one-half pound bag of marijuana found in the shoe box there were also a box of sandwich bags, a digital scale, and a large amount of cash — items consistent with marijuana distribution. The combined amounts of marijuana, almost one pound, indicated that the defendant intended to distribute it and that it was not simply for personal use. Also, the "loose marijuana" found with the individually packaged bags of marijuana within the larger bag was consistent with marijuana distribution.

Finally, the defendant's girlfriend, testifying for the Commonwealth, told the jury that she and the defendant had been dating for approximately eleven years and that she had smoked marijuana on a daily basis for about twelve years. She testified that the defendant supplied her with the marijuana she used daily, but she did not attribute the marijuana found in the apartment to him. She also testified that she slept on the right side of the bed and the defendant slept on the left side, where two marijuana bags were found.

Lastly, factor four deals with how often the Commonwealth mentioned the certificates. Here, the Commonwealth made no mention of the certificates during its closing argument. Contrast *Commonwealth* v. *Tyree*, 455 Mass. 676, 702 (2010) (in closing argument "prosecutor repeatedly tied the defendant to the crimes by referring to tainted evidence"); *Commonwealth* v. *Ware, ante* 53, 58 (2009). For the foregoing reasons, we conclude any error in the admission of the certificates to have been harmless beyond a reasonable doubt. Compare *Commonwealth* v. *Rodriguez, supra.*

3. *Expert testimony.* The defendant contends that the trial judge erroneously permitted Ciccarelli to testify that the defendant intended to distribute illicit substances. He further complains that his trial counsel was ineffective for failing to object to this testimony. We disagree on both points.

At issue here is whether Ciccarelli's statement, "I would say my opinion is absolutely that the first items there for possession with the intent to distribute," constitutes an impermissible opinion as to the defendant's guilt. As the defendant did not object to this testimony, we review to determine whether its admission created a substantial risk of a miscarriage of justice. We will also evaluate the defendant's ineffective assistance of counsel claim under the same standard. Under *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), we evaluate these claims under the familiar two-prong test to determine "whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." In deciding

whether this was an omission that constituted ineffective assistance of counsel, we equate "depriv[ing] the defendant of an otherwise available, substantial ground of defence," *ibid.*, with "a substantial risk of a miscarriage of justice." *Commonwealth* v. *Delong*, 72 Mass. App. Ct. 42, 47 (2008), quoting from *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967).

After considering the entire direct examination in context, we conclude that neither the admission of the testimony nor the failure of counsel to object created a substantial risk of a miscarriage of justice. The defendant concedes that a properly qualified witness may be asked questions that call for an opinion as to whether certain quantities of drugs and certain paraphernalia were consistent or inconsistent with personal use. See *Commonwealth* v. *Wilson*, 441 Mass. 390, 401 (2004); *Commonwealth* v. *Little*, 453 Mass. 766, 769 (2009); Mass. G. Evid. § 702 (2008-2009). However, the defendant's challenge here is to an opinion expressed in absolute terms that also lacked the approved "consistent with" formulation, flaws that he contends amount to impermissible opinion testimony that improperly bore on the ultimate issue. "Where a specified intent is an element of the crime, a witness's opinion as to what the defendant intended is improper. Standing alone, such evidence cannot sustain a conviction." *Commonwealth* v. *Santiago*, 41 Mass. App. Ct. 916, 917 (1996). *Ibid.*, quoting from *Commonwealth* v. *Woods*, 419 Mass. 366, 375 (1995) (conviction affirmed when in light of other evidence, including defendant's testimony that he intended to give some of heroin to girlfriend, "admission of the improper testimony was not substantially prejudicial"). See *Commonwealth* v. *Woods*, *supra* at 375 & n.13 ("[b]oth officers testified, as a matter of their expert opinion, that a drug transaction had taken place"); *Commonwealth* v. *Tanner*, 45 Mass. App. Ct. 576, 579 (1998).[8]

Here the officer discussed his qualifications and generally

---

[8]The officer in *Tanner* testified that he observed a woman approach the defendant and her male companion and hand him some cash. Then he saw the defendant's companion spit something out of his mouth and place it in the woman's hand, after which she walked away. Based on this evidence the officer stated, "[F]rom my experience, I believed a drug transaction had taken place." *Commonwealth* v. *Tanner*, *supra* at 580. The court found the admission of this opinion to be improper.

described drug distribution, including the general practices of drug dealers and typical signs or tools of the trade, i.e., quantity of drug, packaging materials, and weighing implements, and the presence of cash, communication devices, and cutting materials. After Ciccarelli was asked for a brief explanation of the manner in which marijuana is distributed in the locale, the prosecutor placed before him three items, previously marked as exhibits, that had been found in the box located in the headboard: a bag of marijuana, a digital scale, and sandwich bags. He was then properly asked whether, based upon his training and experience, the three items were "consistent with personal use or possession with intent to distribute"; to this he responded: "I would say absolutely possession with intent." Asked for his reasons, Ciccarelli responded by characterizing the amount of marijuana as "significant"; he later estimated the amount to be about one-half pound, which he considered more consistent with intent to distribute than personal use. He also linked the presence of the scale and the sandwich bags to a drug-selling operation, describing their purpose and significance. Additionally, he was asked about the presence of money in the same box, and he opined that the proximity of four to five hundred dollars in cash to the marijuana was likely indicative of a drug sale.

The prosecutor then showed Ciccarelli another bag containing a lesser amount of marijuana, as well as some loose marijuana found under the mattress and some burnt marijuana blunts and roaches found on the bedroom dresser, all of which had been admitted into evidence. He asked Ciccarelli, "[B]ased on [the totality of] the items I've placed before you, . . . can you form an opinion with regard to possession versus possession with intent?" Ciccarelli responded, "I would say my opinion is absolutely that the first items there for possession with intent to distribute it, however some of the other items — specifically the roaches there indicate to me that there's some drug usage as well where this was found . . . ." It is about this last question and answer that the defendant now complains, contending on appeal that because it did not contain the "consistent with" language, it improperly sought and elicited an opinion about the intent of the defendant and, thus, amounted to a statement as to the defendant's guilt.

First, the opinion at issue, unlike those given by the witnesses in *Woods* and *Tanner*, was given by a nonpercipient witness. Moreover, the testimony of the experts in *Woods* and *Tanner* did not merely describe or explain what they observed, but rather, based on their observations and expertise, they concluded that the defendant had committed a particular offense. *Commonwealth* v. *Tanner, supra* at 581 ("[I]n determining whether particular expert testimony is lawful, the better practice is to focus the analysis on whether the evidence is *explanatory*"). "Expert testimony must be explanatory, and not 'presented in conclusory form . . . in terms of whether [the] defendant did or did not commit a particular offense,' to avoid infringing on the defendant's right to a fair trial." *Commonwealth* v. *Grissett*, 66 Mass. App. Ct. 454, 458 (2006), quoting from *Commonwealth* v. *Tanner, supra.*

Here, considering the context of the challenged testimony, the opinion did not stand alone but was based upon a series of opinions, properly expressed, that began with a question in proper form. The opinion was grounded in the evidence as it was based upon the officer's training and experience about the methods of drug dealers and the significance of certain amounts of marijuana, cash, and implements of the drug trade. "Questions grounded in previously admitted evidence may be posed to an expert witness calling for an opinion within the expert's field of expertise, even if the witness's reply thereby touches on the ultimate issue of the case." *Commonwealth* v. *Tanner, supra* at 579. See *Commonwealth* v. *Grissett, supra* at 457, quoting from *Commonwealth* v. *Wilson, supra* ("[S]uch testimony may be admitted only if it is 'limited to an opinion that the hypothetical facts were consistent with possession of [subject drugs] with the intent to distribute' "). See also *Commonwealth* v. *Johnson*, 410 Mass. 199, 202 (1991) (holding that it was not error to admit a police officer's opinion testimony that an amount of cocaine was not consistent with personal use but was consistent with an intent to distribute). The answer challenged here, while not in approved form and improper in isolation, merely built upon and summarized the expert's preceding opinion. The testimony was sufficiently explanatory and not so conclusory to have warranted being struck from evidence if there had been an objection. See *Commonwealth* v. *Dancy*, 75 Mass. App. Ct. 175, 182-183 (2009) (court held that,

while close, admission of officer's testimony was not error when he replied to hypothetical question that "it would lead me to believe that there may have been a drug transaction," because he was nonpercipient witness and his response was based on evidence that had been admitted). Moreover, we cannot discount that a reasonable strategic choice of trial counsel might have included deciding not to object because an objection might unnecessarily have highlighted an issue inconsistent with a reasonable line of defense.

Even if we were to conclude that the opinion as expressed would have, upon objection, been struck in the form given and that trial counsel was therefore ineffective for not objecting, we are satisfied that no substantial risk of a miscarriage of justice resulted in this case. Defense counsel emphasized that the officers did not find contraband on the defendant; that there was no direct evidence that the defendant had knowledge of the marijuana's presence in the room; and that the room where the contraband was found was accessible to all the occupants of the apartment, including the defendant's girlfriend and her children. Moreover, the premise and central theme of the defense throughout the case were that the defendant did not know about or possess the marijuana; whether there was evidence indicative of an intent to distribute was of subsidiary import. As in *Santiago, Woods,* and *Tanner,* no substantial risk of a miscarriage of justice resulted, since no reasonable ground of defense was thereby affected. See and compare *Commonwealth* v. *Woods, supra* at 375 & n.13 (officer's testimony that he believed defendant was involved in a drug sale was harmless error); *Commonwealth* v. *Tanner, supra* at 579-580. Compare also Mass. G. Evid. § 704. See also *Commonwealth* v. *Arias,* 55 Mass. App. Ct. 782, 788 (2002) ("because the officer carefully explained that distribution could be inferred from the method of packaging and the location of the drugs, testimony generally admissible, . . . the conclusion was not significantly more prejudicial than the explanation and did not create a substantial risk of a miscarriage of justice").

4. *Sufficiency of the evidence.* The defendant contends that the evidence of his possession and intent to distribute was insufficient.[9] We disagree. In the headboard compartment on the

---

[9]With respect to the defendant's claim that the evidence was insufficient to

side of the bed in which the girlfriend testified that the defendant slept, the officers found one-half pound of marijuana, a digital scale, sandwich bags, and $465. Marijuana blunts were in plain view on the dresser, and three small bags and some loose marijuana fragments were located under the side of the mattress where the defendant slept. His driver's license and male clothing were also found in the room.

Under the familiar *Latimore* standard, viewing the evidence in the light most favorable to the Commonwealth, there was sufficient evidence that the defendant had constructive possession of the marijuana and paraphernalia. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). Even if his control and dominion over the bedroom were not exclusive, which is not a requirement of constructive possession, there was sufficient evidence that the defendant had dominion and control over the bedroom and the drugs that were found there. "[P]resence, supplemented by other incriminating evidence, 'will serve to tip the scale in favor of sufficiency.' " *Commonwealth* v. *Sespedes*, 442 Mass. 95, 99 (2004), quoting from *Commonwealth* v. *Albano*, 373 Mass. 132, 134 (1977).

Here, the defendant's presence in the apartment, and the presence of the incriminating items in the room in which he slept and where his license and some of his clothes were found, provided sufficient evidence of the defendant's constructive possession of the contraband. See *Commonwealth* v. *Rivera*, 31 Mass. App. Ct. 554, 556-557 (1991) (defendant constructively possessed cocaine found in film canister in suitcase near closet where defendant was present during search and police found defendant's possessions in closet and room); *Commonwealth* v. *Clarke*, 44 Mass. App. Ct. 502, 504-506 (1998) (defendant had constructive possession over drugs found in bedroom where his clothes and various forms of identification were present). Finally, the defendant's girlfriend testified that the marijuana she smoked was given to her by the defendant, evidence that is probative of both the defendant's possession and his intent to distribute. The

show an intent to distribute, see the discussions in sections 2 and 3, *supra*, that concern the admissibility of expert testimony as well as the evidence independent of the drug certificates of analysis, which are dispositive of this claim.

judge did not err in denying the defendant's motion for a required finding of not guilty.

*Judgments affirmed.*